IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:17-CV-1113

| | |
|---|---|
| NORTH CAROLINA DEMOCRATIC PARTY; CUMBERLAND COUNTY DEMOCRATIC PARTY; DURHAM COUNTY DEMOCRATIC PARTY; FORSYTH COUNTY DEMOCRATIC PARTY; GUILFORD COUNTY DEMOCRATIC PARTY; MECKLENBURG COUNTY DEMOCRATIC PARTY; ORANGE COUNTY DEMOCRATIC PARTY; and WAKE COUNTY DEMOCRATIC PARTY, <br><br> Plaintiffs <br><br> v. <br><br> PHILLIP E. BERGER, in his official capacity as PRESIDENT PRO TEMPORE OF THE NORTH CAROLINA SENATE; TIMOTHY K. MOORE, in his official capacity as SPEAKER OF THE NORTH CAROLINA HOUSE OF REPRESENTATIVES; THE STATE OF NORTH CAROLINA; THE NORTH CAROLINA BIPARTISAN STATE BOARD OF ELECTIONS AND ETHICS ENFORCEMENT; and KIMBERLY STRACH, in her official capacity as EXECUTIVE DIRECTOR OF THE NORTH CAROLINA BIPARTISAN STATE BOARD OF ELECTIONS AND ETHICS ENFORCEMENT, <br><br> Defendants | DEFENDANTS' JOINT MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION |

NOW COME Defendants, by and through their respective undersigned counsel, and hereby submit this Memorandum in Opposition to Plaintiffs' Motion for a Preliminary Injunction.

## NATURE OF THE CASE

Plaintiffs, consisting of eight (8) state and county Democratic Party organizations, move this Court for a preliminary injunction ordering Defendants to hold primary elections for State judicial offices in North Carolina. Plaintiff organizations insist that the lack of a primary election this year for these offices violates the organizations' "associational rights protected by the First and Fourteenth Amendments of the U.S. Constitution." (Dkt. 2, Complaint at ¶ 2). For the reasons herein, particularly that there is no constitutional obligation for a state to have a primary, Defendants oppose this motion.

## STATEMENT OF FACTS

1.  On October 17, 2017, the General Assembly enacted Senate Bill 2017-656, the Electoral Freedom Act of 2017, which was ratified as North Carolina Session Law 2017-214 ("S.L. 214").

2.  S.L. 214 became effective January 1, 2018.

3.  S.L. 214 increased ballot access in North Carolina by reducing the number of signatures required for political organizations to become recognized political parties in North Carolina and for an unaffiliated

candidate to be listed on the ballot, including ballots for certain municipal elections.

4.     S.L. 214 also eliminated "party primaries … for candidates seeking the following offices in the general election on November 6, 2018: Justices of the Supreme Court[,] Judge of the Court of Appeals[,] Judges of the superior courts[,] Judges of the district courts." (*See* Dkt. 2-2, S.L. 214 at Section 4.(a)).

5.     The judicial candidate with the highest number of votes wins the respective election. (*Id* at Section 4.(k)).

6.     For the General Election on November 6, 2018, S.L. 214 establishes the candidacy filing period for these judicial offices as June 18, 2018, to June 29, 2018.

7.     The candidacy filing period for other races in the 2018 General Election that do have primaries is from February 12, 2018 to February 28, 2018. *See* http://www.ncsbe.gov/Elections/Candidate-Filing (last visited January 8, 2018).

8.     The primaries for 2018 are scheduled for May 8, 2018.

9.     On December 12, 2017, Plaintiffs filed a complaint, (Dkt. 2), challenging Section 4(a) of S.L. 214 as violating their First and Fourteenth Amendment rights of political association.

10. Along with their Complaint, Plaintiffs also filed on December 12, 2017 a Motion for Preliminary Injunction, (Dkt. 14), and a Memorandum in Support, (Dkt. 15), along with seven declarations, (Dkts. 14-1 through 14-7), some with their own exhibits.[1] Plaintiffs did not file a motion for temporary restraining order.

11. By orders of this Court, consideration of Plaintiffs' Motion for Preliminary Injunction was placed on an expedited schedule and a hearing on the Motion is scheduled for January 24, 2018. (*See* Text Order dated December 27, 2017 and Dkt. 32, Order entered January 8, 2018).

## STANDARD OF REVIEW

"A preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 674 (2008) (citations omitted). A movant must establish each of four elements before a preliminary injunction may issue: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Counsel, Inc.*, 555 U.S. 7, 20 (2008). "[A]ll four requirements must be satisfied." *Real*

---

[1] Defendants object to the declarations under Rules of Evidence 602 (Lack of personal knowledge), 701 (improper lay witness testimony), and 702 (improper expert testimony), and reserve their right to raise and detail these objections.

*Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346 (4ᵗʰ Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010); *see also Cantley v. W. Va. Reg'l Jail & Corr. Facility Auth.*, 771 F.3d 201, 207 (4ᵗʰ Cir. 2014) ("A plaintiff seeking injunctive relief must satisfy these four factors[.]").

Mandatory preliminary injunctions, such as the one sought by Plaintiffs, do not preserve the status quo and are only granted in very specific circumstances, usually only when extreme or serious damage will result. *See E. Tenn. Nat. Gas Co. v. Sage*, 361 F.3d 808, 828 (4ᵗʰ Cir.*), cert. denied*, 543 U.S. 978 (2004); *Wetzel v. Edwards*, 635 F.2d 283, 286 (4ᵗʰ Cir. 1980) ("Mandatory preliminary injunctions do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demand such relief."). Mandatory preliminary injunctions are disfavored by the court. *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 235 (4ᵗʰ Cir. 2014), *cert. denied*, 135 S. Ct. 1735 (2015) (citing *Taylor v. Freeman*, 34 F.3d 266, 270 n.2 (4ᵗʰ Cir. 1994)).

## QUESTIONS PRESENTED

I.  Does this Court have jurisdiction to order a state to regulate its own judicial elections by ordering that the state conduct primary elections in judicial races?

II.     Are Plaintiffs entitled to an injunction when the United States Constitution does not guarantee primary elections in state judicial elections?

## ARGUMENT

A preliminary injunction is not appropriate in this matter as this matter is non-justiciable, is barred by the Eleventh Amendment, and Plaintiffs lack standing.[2]     Furthermore, a preliminary injunction is also inappropriate because none of the four *Winter* factors weigh in Plaintiffs' favor.  Plaintiffs are not likely to succeed on the merits, they are not likely to suffer irreparable harm, the balance of equities does not tip in their favor, and an injunction is not in the public's interest.  Plaintiffs have failed to show their entitlement to the extraordinary remedy of a mandatory preliminary injunction.

I.     <u>**THIS COURT LACKS JURISDICTION TO ORDER A STATE TO CONDUCT PRIMARY ELECTIONS IN STATE JUDICIAL RACES.**</u>

A.     **PLAINTIFFS' CLAIMS ARE NON-JUSTICIABLE.**

Plaintiffs complain that the elimination of judicial primaries will lead to more judicial candidates on the ballot during the General Election, and argue

---

[2] These three cited defenses to the Motion for Preliminary Injunction would normally be asserted as Rule 12(b) defenses at the time Defendants respond to the Complaint.  Defendants reserve their right to assert these and additional Rule 12(b) defenses, including improper venue, at the appropriate time.  By filing this opposition to the Motion for Preliminary Injunction, Defendants do not intend to waive such defenses.

that the voting public will not be educated enough to vote for the best or most qualified candidates. They argue that primaries serve an important role of narrowing the field of candidates so that voters have fewer candidates to choose from during the general election. In essence, Plaintiffs argue that the State needs to reinstate judicial primaries as a way to regulate judicial elections. To this end, Plaintiffs cite to cases justifying regulations and other ballot-access-limiting statutes as reasonable. In short, Plaintiffs seek to have this Court regulate the State's judicial elections in a manner contrary to the State's wishes by either imposing a primary election on state judicial elections or by an order directing the State to hold primary elections.

"[T]he Constitution grants to the States a broad power to prescribe the 'Times, Places and Manner of holding Elections for Senators and Representatives,' Art. I, § 4, cl. 1, which power is matched by state control over the election process for state offices." *See Tashjian v. Republican Party*, 479 U.S. 208, 217, 107 S. Ct. 544, 550 (1986). A state may choose to institute primary elections. *Cal. Democratic Party v. Jones*, 530 U.S. 567, 572-73, 120 S. Ct. 2402, 2407 (2000) (citations omitted) (We have considered it "too plain for argument," for example, that a State *may require* parties to use the primary format for selecting their nominees, in order to assure that intraparty competition is resolved in a democratic fashion.") (emphasis added). However, a decision not to have primary elections is not subject to federal judicial review.

*See Baker v. Carr*, 369 U.S. 186, 231 (1962) ("When a State exercises power wholly within the domain of state interest, it is insulated from federal judicial review. But such insulation is not carried over when state power is used as an instrument for circumventing a federally protected right.") (quoting *Gomillion v. Lightfoot*, 364 U.S. 339, 347, 81 S. Ct. 125, 130 (1960)). There is no right under the United States Constitution to a primary election. Rather, the Constitution leaves it to the states to regulate their elections.

### B. PLAINTIFFS LACK STANDING.

The United States Court of Appeals for the Fourth Circuit has stated that "[s]tanding is a threshold jurisdictional question which ensures that a suit is a case or controversy appropriate for the exercise of the courts' judicial powers under the Constitution of the United States." *Pye v. United States*, 269 F.3d 459, 466 (4th Cir. 2001)(citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102 (1998)). The burden of establishing compliance with standing requirements rests upon the party asserting the claim. *Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 320 (4th Cir. 2002). To prove standing, organizations must show an impairment of their ability to advance their purposes combined with a consequent drain on the organizations' resources. *Southern Walk at Broadlands Homeowner's Ass'n v. Openband at Broadlands, LLC*, 713 F.3d 175, 183 (4th Cir. 2013). Plaintiffs have not met these requirements in their Complaint.

Plaintiffs assert various purposes of their organizations, but fail to show how any of these purposes have been impaired by a lack of a primary election, and are silent on how their organizational resources are being drained, if at all, as a consequence. Specifically, Plaintiff North Carolina Democratic Party ("NCDP") asserts in the Complaint that its purposes are to:

> (i) bring people together to develop public policies and positions favorable to NCDP members and the public generally, (ii) identify candidates who will support and defend those policies and positions, and (iii) persuade voters to cast their ballots for those candidates.

(Dkt. 2, Complaint at ¶ 4). The purposes of the county-specific Plaintiff organizations are to:

> (i) bring people together to develop public policies and positions favorable to their members and the public generally in their respective counties, (ii) identify candidates who will support and defend those policies and positions in their respective counties, (iii) persuade voters to cast their ballots for those candidates in their respective counties, and (iv) provide grassroots energy and organization for Democrats in their respective counties.

(Dkt. 2, Complaint at ¶ 5). The rest of Plaintiffs' Complaint identifies the parties, describes the legislative history of the challenged statute, argues for the importance of primaries allegedly according to case law, asserts that the challenged statute lacks a compelling or important regulatory interest, and makes other conclusory statements. Plaintiffs do not describe any impairment of their ability to advance their asserted purposes, nor can they. None of their

asserted purposes rely on the existence of a primary election. Even without a primary election, Plaintiffs can still

- bring people together to develop public policies and positions favorable to [their] members and their counties,

- identify candidates who will support and defend those policies and positions,

- persuade voters to cast their ballots for those candidates, and

- provide grassroots energy and organization for Democrats in their respective counties.

Plaintiffs have not alleged that any of these efforts have or will be stopped due to the lack of a primary for judicial candidates. In fact, during the 2014 election for the North Carolina Court of Appeals that featured no primary by operation of law, which was discussed by several affiants, the NCDP nonetheless accomplished its mission of endorsing a single candidate amongst a field of 19 candidates.

> Bob Orr, a former N.C. Supreme Court member, said weeks ago that he expected endorsements would help candidates and voters gravitate toward a shorter list on Election Day.
>
> The N.C. Republican Party has endorsed Tyson, the N.C. Democratic Party endorsed Arrowood, and the N.C. Democratic Black Caucus endorsed Lovelace.

Anne Blythe, A whopping 19 candidates vying for on NC Court of Appeals seat, *The News & Observer*, October 17, 2014.[3]  Likewise, Plaintiffs have not alleged any consequent drain on the organizations' resources.  Plaintiffs have failed to meet their burden of establishing standing to bring these claims, and also failed to show a likelihood of success on the merits.

### C. PLAINTIFFS' CLAIMS AGAINST CERTAIN DEFENDANTS ARE BARRED BY THE ELEVENTH AMENDMENT.

Plaintiffs' claims against the State of North Carolina ("the State") and the North Carolina Bipartisan State Board of Elections and Ethics Enforcement ("the State Board") are barred by Eleventh Amendment immunity.

The Eleventh Amendment protects a State, State agencies, and State officials from suit in federal court by one of the State's citizens or the citizen of another state.  *California v. Deep Sea Research*, 523 U.S. 491, 501 (1998).  *See also Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261 (1997); *Hans v. Louisiana*, 134 U.S. 1 (1890).  However, "a suit against individuals for the purpose of preventing them as officers of a State from enforcing an unconstitutional enactment to the injury of the rights of the plaintiff, is not a suit against the State within the meaning of that Amendment."  *Ex parte Young*, 209 U.S. 123,

---

[3] Available at http://www.newsobserver.com/news/politics-government/election/article10099751.html#storylink=cpy.

154 (1908). As such, a State official can be sued for prospective relief to prevent the continuing enforcement of an unconstitutional law. *See S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 332 (4th Cir. 2008); *see also Verizon Md., Inc. v. PSC*, 535 U.S. 635, 645 (2002).

Pursuant to this line of cases, the State is entitled to Eleventh Amendment immunity and should be dismissed from this suit. In addition, the State Board is also entitled to Eleventh Amendment immunity because it is an agency of the State. "It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment…. This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. at 100.

The State and the State Board are entitled to Eleventh Amendment immunity; this Court lacks jurisdiction over them and they should be dismissed. Plaintiff has therefore failed to establish a likelihood of success against these defendants.

## II. __PLAINTIFFS FAIL TO PROVE THEY ARE ENTITLED TO AN INJUNCTION, IN PARTICULAR WHEN THE CONSTITUTION DOES NOT GUARANTEE PRIMARY ELECTIONS IN STATE JUDICIAL ELECTIONS.__

### A. __PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS.__

Plaintiffs also fail to state a claim for relief. Contrary to Plaintiffs' assertions, the cases they rely on do not support their position. There is no right under the United States Constitution to a primary election. Rather, the Constitution leaves it to the states to regulate their elections in accordance with federal laws and the Constitution. *See Tashjian v. Republican Party*, 479 U.S. 208, 217, 107 S. Ct. 544, 550 (1986) ("… [T]he Constitution grants to the States a broad power to prescribe the 'Times, Places and Manner of holding Elections for Senators and Representatives,' Art. I, § 4, cl. 1, which power is matched by state control over the election process for state offices.").

In their Complaint and Motion for Preliminary Injunction, Plaintiffs cite to and quote from the Supreme Court's decision in *California Democratic Party v. Jones*, 530 U.S. 567 (2000), to support their claims. (*See* Dkt. 2, Complt. at ¶ 1.) *Jones*, however, does not establish a constitutional right to a primary election. Rather, it holds that if a state *choses* to regulate its elections using primaries, the state cannot dictate to the political parties who participates in those elections.

> We have recognized, of course, that States have a major role to play in structuring and monitoring the election process, including primaries. We have considered it "too plain for argument," for example, that a State *may require* parties to use the primary format for selecting their nominees, in order to assure that intraparty competition is resolved in a democratic fashion ….
>
> What we have not held, however, is that the processes by which political parties select their nominees are, as respondents

> would have it, wholly public affairs that States may regulate
> freely. To the contrary, we have continually stressed that *when
> States regulate* parties' internal processes they must act within
> limits imposed by the Constitution.

*Cal. Democratic Party v. Jones*, 530 U.S. 567, 572-73 (2000) (citations omitted) (emphasis added). A state has the option of limiting the number of candidates by requiring primaries, but it is not required to do so. *See Am. Party of Tex. v. White*, 415 U.S. 767, 781 (1974) ("It is too plain for argument, and it is not contested here, that the State may limit each political party to one candidate for each office on the ballot and may insist that intraparty competition be settled before the general election by primary election or by party convention.").

Thus, under existing case law, it would be unconstitutional for the State to mandate either open or closed primaries. *See Tashjian v. Republican Party*, 479 U.S. 208, 212-14 (1986) (holding that state election statute requiring voters in any party primary election to be registered members of that party was an unconstitutional restriction on the party's right to association where the party adopted a rule permitting independent voter participation in its primary election); *cf California Democratic Party v. Jones*, 530 U.S. 567, 581-82 (2000) (holding that a state election statute allowing all voters to vote in any primary, regardless of party affiliation, violated the party's right to association where

the party sought to limit voting in its primary to voters affiliated with the party.). *See also Miller v. Brown*, 503 F.3d 360, 368 (4th Cir. 2007).

These cases establish that the State cannot dictate to political parties who can vote in their primary elections. These cases do not establish that the State must allow for primary elections. Plaintiffs do not cite to any case holding that a lack of a primary election, particularly in the case of judicial officers, is a violation of the Constitution, and undersigned counsel could not find any. Moreover, it is clear that the Constitution does not guarantee the right to primaries in judicial elections because federal judges are not elected, and many states do not elect judges at all. Given that the Constitution— whether in the First or Fourteenth Amendments or elsewhere—does not require that judges be elected at all, it certainly does not require that judicial candidates be chosen through primary elections. Therefore, there is also no equal protection claim or Voting Rights issue alleged to be violated.

Plaintiffs and their declarants challenge the elimination of judicial primaries for a single election cycle that might lead to a larger number of candidates, of both party affiliations or no party affiliation, on the ballot for a particular judicial seat. But the elected representatives of the people of North Carolina made a choice among competing interests that led to the determination that it was beneficial to cancel the 2018 judicial primary. "Such decisions are entrusted under the Constitution to Congress, not the courts. It

is the role of the courts only to ensure that congressional decisions comport with the Constitution." *Harris v. McRae*, 448 U.S. 297, 326 (1980). A court does not, "in the name of the Constitution, overturn duly enacted statutes simply 'because they may be unwise, improvident, or out of harmony with a particular school of thought." *See id.* (quoting *Williamson v. Lee Optical Co.*, 348 U.S. 483, 488 (1955)). Rather, "when an issue involves policy choices as sensitive as those implicated [here] . . . , the appropriate forum for their resolution in a democracy is the legislature." *Id.* (quotations omitted). Plaintiffs and their declarants are simply looking to this Court to implement what they believe to be a sounder policy than the one chosen by the General Assembly.

Plaintiffs cannot "demonstrate by 'a clear showing' that, among other things, they are likely to succeed on the merits at trial." *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 345 (4th Cir. 2009) (*quoting Winter*, 555 U.S. at 22), *vacated on other grounds*, 559 U.S. 1089 (2010). Preliminary injunctive relief is not the appropriate course where the law is not clearly established. *See Real Truth About Obama*, 575 F.3d at 345.

### B.  PLAINTIFFS FAIL TO SHOW IMMEDIACY OF IRREPARABLE HARM.

A plaintiff must demonstrate an "actual, viable, presently-existing threat" to support preliminary injunctive relief. *City of Newburgh v. Sarna*,

690 F. Supp. 2d 136, 164 (S.D.N.Y. 2010), *affirmed in part and appeal dismissed in part by*, 406 Fed. Appx. 557 (2d Cir. 2011). Plaintiffs' Motion for Preliminary Injunction, however, relies entirely on their mistaken interpretation of *Jones* and their assertion that they have a constitutional right to a primary election. They therefore assert incorrectly that the irreparable harm they will suffer is a constitutional violation. As discussed above, the lack of a primary election is not a constitutional violation, and Plaintiffs have failed to establish that they will suffer irreparable harm.

Plaintiffs delay in seeking relief is also inconsistent with their claim that they will suffer irreparable harm. *Phoenix Bevs, Inc. v. Exxon Mobil Corp*., No. 12-cv-3771 (DKC) (JO), 2015 U.S. Dist. LEXIS 16959, *18 (E.D.N.Y. Feb. 11, 2015). In *City of Newburgh*, the court held that photos taken 17 months before the Complaint was filed did not support evidence of a present threat sufficient to warrant the preliminary injunctive relief of overhauling the department's stormwater management system. *Id*. at 166. In this matter, the challenged statute was enacted in October 2017, but Plaintiffs waited until two months later to bring an action, knowing that filing for the 2018 General Election was fast approaching. There is a strong equitable presumption against granting Plaintiffs' motion for a preliminary injunction where the factual basis for the alleged violations could have been brought shortly after the passage of S.L. 214. *See Nelson v. Campbell*, 541 U.S. 637 (2004) (equitable presumption

against the grant of stay where claim could have been brought at such time as to allow consideration of merits without requiring entry of stay).

Plaintiffs must make a clear showing that they are likely to be irreparably harmed in order to warrant injunctive relief; irreparable harm must be "neither remote nor speculative, but actual and imminent." *Summer Wealth Mgmt., L.L.C. v. Inv. Placement Group*, No. 1:15-c-1660 (JCC/JFA), 2016 U.S. Dist. LEXIS 3734, *7 (E.D. Va. Jan. 12, 2016) (*quoting Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991)). Plaintiffs fail to make a showing of actual, imminent harm and injunctive relief should be denied.

## C. PLAINTIFFS FAIL TO SHOW THAT THE BALANCE OF EQUITIES TIPS IN THEIR FAVOR, AND THAT AN INJUNCTION IS IN THE PUBLIC INTEREST.

To establish the third and fourth *Winter* factors, Plaintiffs also rely entirely on their assertion that elimination of the judicial primaries violates the United States Constitution. Their desire to have judicial primaries does not outweigh the States' protected interest in regulating its own elections.

The public interest also weighs against institution of judicial primaries by injunction. As conceded by Plaintiffs, the boundaries of judicial districts are currently being considered by the General Assembly. (*See* Dkt. 14-4, Declaration of Marcia Morey) ("The magnitude of the judicial district changes would result in massive reconfiguration of voting maps and double bunking of

incumbent judges[.]").  New boundaries, if enacted, will not be in place in time for the filing of judicial candidates in February, and it is unlikely that the implementation of any new boundaries will be complete in time for the May primaries.  This will result in candidate and voter confusion during the elections, which may also result in suppressed voter turnout.  Those individuals who might run for judicial office in 2018 have planned, since October 2017, to file their candidacy in June.  Opening candidate filing on a handful of days' notice now, while also instituting a primary, would disrupt every candidate's campaign: candidates would have to file earlier than they had anticipated and prepare to compete in a primary that they did not anticipate while contemplating their candidacy, all within a short amount of time. [4]

Introducing these structural changes to the election process so close to a filing period would sow confusion and disorder into the election cycle.  These harms loom large in comparison to and benefit to be gained by allowing Plaintiffs the ability to conduct primaries, particularly when they have

---

[4] There is even a potential that institution of candidate filing and a judicial primary before the new boundaries are applied could require candidates to refile if their districts have changed, then campaign in new districts, and may require either another primary or a ballot with candidates selected in a primary running for the same district as other candidates from their party. The risk of confusion is higher if an injunction is granted, but the Court later rules in favor of Defendants.

demonstrated an ability to choose and back a candidate even in a crowded field in a judicial race that did not have a primary.

## **CONCLUSION**

For the reasons stated herein, Defendants oppose the motion for preliminary injunction and respectfully request that the motion be denied in its entirety.

WHEREFORE, Defendants respectfully request that this Court deny Plaintiffs' Motion for Preliminary Injunction.

Respectfully submitted this 12th day of January, 2018.

JOSHUA H. STEIN
Attorney General

/s/ James Bernier, Jr.
James Bernier, Jr.
Special Deputy Attorney General
N.C. State Bar No. 45869
Email: jbernier@ncdoj.gov

/s/ Olga Vysotskaya
Olga E. Vysotskaya de Brito
Special Deputy Attorney General
N.C. State Bar No. 31846
Email: ovysotskaya@ncdoj.gov

/s/ Amar Majmundar
Amar Majmundar
Senior Deputy Attorney General
N.C. Bar No. 24668
Email: amajmundar@ncdoj.gov

/s/ Alexander McC. Peters
Alexander McC. Peters
Chief Deputy Attorney General
N.C. State Bar No. 13654
Email: apeters@ncdoj.gov

N.C. Department of Justice
Post Office Box 629
Raleigh, NC 27602-0629
Telephone: (919)716-6900

*ATTORNEYS FOR* Defendants
*KIMBERLY STRACH, in her official
capacity as Executive Director of the
North Carolina Bipartisan State
Board Of Elections and Ethics
Enforcement, THE STATE OF
NORTH CAROLINA BIPARTISAN
STATE BOARD OF ELECTIONS
AND ETHICS ENFORCEMENT, and
THE STATE OF NORTH CAROLINA*

NELSON MULLINS RILEY &
SCARBOROUGH LLP

By: /s/ D. Martin Warf
   Noah H. Huffstetler, III
N.C. State Bar No. 7170
   D. Martin Warf
N.C. State Bar No. 32982
4140 Parklake Avenue, Suite 200
Raleigh, NC 27612
Telephone: (919) 877-3800
noah.huffstetler@nelsonmullins.com
martin.warf@nelsonmullins.com

*ATTORNEYS FOR* Defendants
*PHILIP E. BERGER, in his official
capacity as President Pro Tempore of
the North Carolina Senate and
TIMOTHY K. MOORE, in his official
capacity as Speaker of the North
Carolina House of Representatives*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day electronically filed the foregoing Motion and Proposed Order attached hereto with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel and parties of record.

This the 12th day of January, 2018.

<u>/s/ James Bernier, Jr.</u>
James Bernier, Jr.
Special Deputy Attorney General