IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| NORTH CAROLINA DEMOCRATIC PARTY; et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PHILLIP E. BERGER, in his official capacity as PRESIDENT PRO TEMPORE OF THE NORTH CAROLINA SENATE; et al.,<br><br>Defendants. | CIVIL ACTION NO. 1:17-cv-1113 |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
THEIR MOTION FOR A PRELIMINARY INJUNCTION**

Defendants' response to Plaintiffs' request for a preliminary injunction does not contain any plausible factual or legal justification for their assault on Plaintiffs' established First Amendment rights and does not attempt to refute that significant and irreparable harm will result to Plaintiffs and all North Carolinians if their legislation eliminating primaries in North Carolina's partisan judicial elections is not enjoined. The legal errors and factual omissions in Defendants' response are catalogued below.

Plaintiffs respectfully renew their request that the Court issue a preliminary injunction enjoining Defendants from eliminating primaries for North Carolina's 2018 judicial elections.

# ARGUMENT

## I. CONTRARY TO DEFENDANTS' ARGUMENTS, PLAINTIFFS' CLAIM IS JUSTICIABLE.

Plaintiffs and Defendants agree on one point here: there is no case precisely on point. This is because the *complete elimination* of primaries for partisan elections is entirely unprecedented. But the unprecedented attack on Plaintiffs' and other political parties' First Amendment rights do not make this case non-justiciable. Plaintiffs cite numerous cases where courts have struck down lesser burdens on political parties' nominations processes. *See California Democratic Party v. Jones*, 530 U.S. 567 (2000) (striking down blanket primary elections); *Tashjian v. Republican Party*, 479 U.S. 208 (1986) (striking down Connecticut law that required primary voters be registered members of the political party); *Democratic Party of United States v. Wisconsin*, 450 U.S. 107 (1981) (striking down statute that required delegates to vote in accordance with the open primary results); *Eu v. San Francisco County Democratic. Central Comm.*, 489 U.S. 214 (1981) (striking down California law that prohibited political party governing bodies from endorsing candidates in party primaries); *Kusper v. Pontikes*, 414 U.S. 51 (1973) (striking down law prohibiting voters from voting in a primary for 24 months following a change in voter registration). Defendants ironically argue that because no legislature has ever gone as far as this legislature, they win. Defendants miss the mark, and the collection of cases cited above makes plain that Plaintiffs' claim is justiciable.

2

## II. CONTRARY TO DEFENDANTS' ARGUMENTS, PLAINTIFFS HAVE STANDING TO BRING THIS LAWSUIT.

There is no doubt that Plaintiffs—state and local political parties—suffer injury in fact by the elimination of primaries for *partisan* judicial elections. A cursory review of the captions of the multitude of First Amendment associational rights cases makes clear that political parties like Plaintiffs are proper parties and have standing to assert these rights. *See Washington State Grange v. Washington State Republican Party*, 552 U.S. 442 (2008) (Washington Republican Party as plaintiff); *California Democratic Party v. Jones*, 530 U.S. 567 (2000) (California Democratic Party, California Republican Party, Libertarian Party of California, and the Peace and Freedom Party as plaintiffs); *Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997) (New Party as plaintiff); *Tashjian v. Republican Party*, 479 U.S. 208 (1986) (Republican Party of Connecticut as plaintiff); *Democratic Party of United States v. Wisconsin*, 450 U.S. 107 (1981) (national and state Democratic Party as defendants); *Eu v. San Francisco County Democratic. Central Comm.*, 489 U.S. 214 (1981) (local and state committees of the Democratic, Republican, and Libertarian parties as plaintiffs); *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579 (6th Cir. 2006) (Libertarian Party of Ohio as plaintiff).

Tellingly, Defendants cite no First Amendment right to association case for their position that Plaintiffs do not have standing. Where an election law adversely impacts a party's resources and ability to recruit candidates, the party has suffered injury in fact. *See Common Cause v. Rucho*, 1:16-cv-1026-WO-JEP, Mem. Op., ECF 118 at 40-41 (M.D.N.C. Jan. 9, 2018) (finding that the NCDP had standing to challenge the 2016

3

congressional plan as a partisan gerrymander). The elimination of primaries adversely impacts Plaintiffs' resources and ability to achieve their stated purposes. In fact, "[w]ithout primaries, political parties lose the compass they rely on to advance the collective interests and goals of their members." Goodwin Decl., ECF 14-1, ¶ 10.

"[T]here can be no question that the [Democratic Party] has suffered injury in fact. Such concrete and demonstrable injury to the organization's activities… constitutes far more than simply a setback to the organization's abstract social interests." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). The Declaration of Chairman Goodwin details the purposes of the North Carolina Democratic Party and the injuries sustained by the party in the absence of primaries. *See* Goodwin Decl., ECF 14-1, ¶¶ 7 (describing purposes of the NCDP), 10 (harm to the NCDP by the elimination of primaries), 12 (describing the impact of primaries on NCDP resources and the dilution of the organization's voice in the election). And Rebecca Llewellyn's Declaration describes the injuries sustained by the county parties as a result of confusion, lack of information, and lack of qualified candidates. *See* Llewellyn Decl., ECF 14-3, ¶¶ 25-28. Defendants' only argument against this evidentiary showing is that in 2014 the NCDP was able to endorse a candidate in the *non-partisan* Court of Appeals race involving 19 candidates. However, endorsement is no substitute for the primary. *See Jones*, 530 U.S. at 580 ("The ability of the party leadership to endorse a candidate is simply no substitute for the party members' ability to choose their own nominee.").

## III. CONTRARY TO DEFENDANTS' ARGUMENTS, THE ELEVENTH AMENDMENT DOES NOT BAR THIS LAWSUIT.

There are five defendants in this lawsuit: three individuals sued in their official capacities, the state agency responsible for administering elections, and the state itself. The relief Plaintiffs seek is prospective injunctive relief. Defendants concede that the Eleventh Amendment permits the Court to award that relief against the three individual defendants sued in their official capacities. The Eleventh Amendment immunity of the State itself and its election agency does not prevent the Court from awarding the relief Plaintiffs seek, does not immunize the challenged statute and does not allow the individual defendants to evade the equitable powers of the Court. *See Ex parte Young*, 209 U.S. 123 (1908).

## IV. CONTRARY TO DEFENDANTS' ARGUMENTS, PLAINTIFFS' INTERESTS IN ACCESS TO PRIMARIES IN PARTISAN ELECTIONS TO SELECT THEIR STANDARD BEARERS FOR THE GENERAL ELECTIONS IS PROTECTED BY THE FIRST AMENDMENT.

Defendants argue that no provision of the United States Constitution guarantees a right to a primary election, but that is not Plaintiffs' claim. Plaintiffs' claim is that they have interests in the selection of their general election standard bearers at partisan elections through primary elections that are protected by the First Amendment. *California Democratic Party v. Jones* could not be clearer: "our cases vigorously affirm the special place the *First Amendment* reserves for, and the special protection it accords, the process by which a party selects a standard bearer who best represents the party's ideologies and preferences." *Jones*, 530 U.S. at 575.

## V. DEFENDANTS NEVER IDENTIFY OR APPLY THE TEST FOR DETERMINING THE VALIDITY OF THE CHALLENGED LEGISLATION UNDER THE FIRST AMENDMENT. APPLICATION OF THAT TEST DEMONSTRATES THAT DEFENDANTS HAVE VIOLATED PLAINTIFFS' FIRST AMENDMENT RIGHTS.

The Supreme Court has established a test—the *Anderson-Burdick* sliding scale test—for determining when a state's election regulations constitute an appropriate exercise of their regulatory powers and when they offend the First Amendment rights of citizens and political parties.

> When analyzing whether a state election law impermissibly infringes on association rights protected by the First and Fourteenth Amendments, courts must 'weigh the 'character and magnitude' of the burden the State's rule imposes on those rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary.''

*S.C. Green Party v. S.C. State Election Comm'n*, 612 F.3d 752, 756 (4th Cir. 2010) (quoting and citing *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997); *Burdick v. Takushi*, 504 U.S. 428 (1992)).

Applying the *Anderson-Burdick* test here, the burden on Plaintiffs' associational rights outweighs any purported state interests. "However slight that burden may appear . . . it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 191 (2008) (quoting *Norman v. Reed*, 502 U.S. 279, 288-89 (1992)). "Even a slight burden on 'a political party, an individual voter, or a discrete class of voters' can violate the First Amendment if not supported by a justification of commensurate magnitude—as is the

6

case here." *Common Cause v. Rucho*, Mem. Op., ECF 118 at 172, 1:16-cv-1026-WO-JEP (Jan. 9, 2018) (quoting *Crawford*, 553 U.S. at 189-90).

Contrary to Defendants' suggestion, the burden imposed is more than a mere policy choice. As described below in section VI, Plaintiffs' recognized First Amendment rights are harmed by the absence of primaries, and Plaintiffs have detailed these harms in unrebutted declarations. Furthermore, debate by members of the North Carolina General Assembly since the filing of Plaintiffs' initial brief has provided additional evidence of the burden created by the statute. North Carolina Representative John Blust (R-Guilford) recently reinforced this concern, stating on January 11, 2018 that allowing numerous candidates onto a partisan general election ballot is "going to be a mess" and is "not going to reflect well on us if we don't allow the number of people who file to be pared down in a primary . . . ." N.C. Joint Select Committee on Judicial Reform and Redistricting 2017 (Jan. 11, 2018) (statement of Rep. Blust), *available at https://www.ncleg.net/documentsites/committees/bcci6719/January%2011,%202018/Meeting%2001-11-18jtcommonjudicialreformandredistricting.mp3*; Second Declaration of Caroline Lim ¶ 4 (attached as Exhibit A). Citing the 2014 election in which 19 candidates filed to fill one vacancy on the N.C. Court of Appeals, he predicted that some candidates will file merely to "see where it goes." *Id.* Especially in urban counties, said Rep. Blust, "you'll just see a boatload of names and the November ballot is going to be very long and with a ton of names of people running for judges . . . ." *Id.*

Defendants do not mention the *Anderson-Burdick* test in their brief and it is plain that they cannot meet it. In their brief Defendants explain that they eliminated primaries in 2018 because they think the legislature might pass a bill redrawing some electoral districts for superior and district court judges and that if those districts are redrawn, that task cannot be accomplished by May when other primaries are scheduled. They do not explain why primaries are also eliminated for appellate judges who are not elected from districts. Nor do they explain why it is necessary or important to implement redrawn districts in 2018 rather than after the release of census data in 2020. Defendants' justifications for their actions are vague, inconsistent, hollow, and self-serving speculation and are not grounds for violating Plaintiffs' constitutional rights.

## VI. CONTRARY TO DEFENDANTS' ARGUMENTS, PLAINTIFFS HAVE DEMONSTRATED THAT THEY WILL SUFFER IRREPARABLE INJURY IF A PRELIMINARY INJUNCTION IS NOT ISSUED.

In section II.B. of their brief, Defendants allege that Plaintiffs will not suffer immediate and irreparable harm. Yet as Plaintiffs have already highlighted, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Centro Tepeyac v. Montgomery Cty.*, 722 F.3d 184, 191 (4th Cir. 2013). "In no area is the political association's right to exclude more important than in the process of selecting its nominee. That process often determines the party's positions on the most significant public policy issues of the day, and even when those positions are predetermined it is the nominee who becomes the party's ambassador to the general electorate in winning it over

to the party's views." *Jones*, 530 U.S. at 575. The statute takes away Plaintiffs' ability to choose their party nominees, forces them to be associated with candidates they do not necessarily support, and frustrates their ability to achieve their purpose of supporting nominees selected by their membership.

Plaintiffs have put forward abundant evidence of the burdens inflicted by the elimination of primaries for partisan elections. Chairman Goodwin describes how the third purpose of the NCDP (to raise funds and provide resources to help candidates persuade voters to cast ballots for them) depends upon primary elections. Goodwin Decl., ECF 14-1, ¶ 7. The NCDP and the local parties rely upon the primary election to determine party candidates and the messaging of the NCDP for the general election, to educate voters, and to enable the parties to focus scarce resources effectively. *Id.* at ¶ 10; Llewellyn Decl., ECF 14-3, ¶¶ 12-14. Retired judges Orr, Stephens, and Morey describe the broader harms by the elimination of primaries: ballot clutter, voter confusion, electoral chaos, an uninformed electorate, and the election of less qualified candidates are unfortunate consequences of the lack of a winnowing process for judicial candidates. *See, e.g.*, Orr Decl., ECF 14-5, ¶¶ 3-5, 7; Stephens Decl., ECF 14-7, ¶¶ 8-11, 12, 14-15, 20-21; and Morey Decl., ECF 14-4, ¶¶ 17-20. Defendants offer no evidence to counter this showing by Plaintiffs.

Furthermore, denial of "voting and associational rights"—including the ability to "vote for candidates who represent their beliefs"—"cannot be alleviated after the election." *Council of Alternative Political Parties v. Hooks*, 121 F.3d 876, 883 (3d Cir.

9

Case 1:17-cv-01113-CCE-JEP   Document 35   Filed 01/17/18   Page 9 of 16

1997). Moreover, the results of this case could determine whether a primary election occurs or how a general election will be structured. There are scarcely more immediate and irreparable stakes than that.

VII. **CONTRARY TO DEFENDANTS' ARGUMENTS THE BALANCE OF EQUITIES AND PUBLIC INTEREST SUPPORT THE ISSUANCE OF AN INJUNCTION.**

Lastly, in section II.C. of their brief, Defendants address the "*Winter* factors," arguing that the balance of equities does not tip in Plaintiffs' favor and that an injunction is not in the public interest. *See generally Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Defendants state, without evidence, that candidates and voters will be confused if the state is forced to hold primary elections before the legislature is finished rewriting laws governing judicial elections. Defendants assert that invalidating the statute now would be too close to the filing period; new boundaries for judicial maps "could require candidates to refile if their districts have changed, then campaign in new districts, and may require either another primary or a ballot with candidates selected in a primary running for the same district as other candidates from their party." Defendants' brief, pp. 19-20.

This argument falls short for at least three reasons. First, Defendants have provided no legal or factual basis upon which the court should rule based on speculation regarding possible future legislation. Indeed, there is no indication as to when such legislation will pass, if ever; what this supposed legislation will do; whether any applicable veto will be overridden; or when it will take effect. It is also unclear whether

10

the purported legislation will draw additional legal challenges, the existence of which would certainly cause additional confusion.

Second, Defendants' justification is overbroad because future legislation that redraws judicial district lines would not affect appellate races whose candidates do not run in districts. A law is invalid where it is shown to be "overbroad [because] a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep," if any. *Greater Balt. Ctr. for Pregnancy Concerns v. Mayor & City Council*, 683 F.3d 539, 565 (4th Cir. 2012) (quotation provided by *United States v. Stevens*, 559 U.S. 460 (2010) (internal quotation marks omitted)). The statute under review affects not just judges on state superior and district courts; it also alters the elections of Justices of the North Carolina Supreme Court and Judges of the North Carolina Court of Appeals. The narrowness of Defendants' justification for the elimination of judicial primaries is a separate reason for declaring the law unconstitutional. In addition, it shows that the challenged statute is not narrowly tailored to advance the state's interest.

Third, as explained in Plaintiffs' initial brief, pp. 16-17, administrative convenience is no excuse for the violation of Plaintiffs' rights. *See Taylor v. Louisiana*, 419 U.S. 522, 535 (1975); *Johnson v. Halifax County*, 594 F. Supp. 161, 171 (E.D.N.C. 1984). *See also Schneider v. State*, 308 U.S. 147, 161 (1939) ("Mere legislative preferences or beliefs respecting matters of public convenience may well support regulation directed at other personal activities, but be insufficient to justify such as

11

diminishes the exercise of rights so vital to the maintenance of democratic institutions."). After engaging in "legislative procrastination," Morey Decl., ECF 14-4, ¶ 17, Defendants are engaged in a continuing violation of Plaintiffs' rights but now argue that ceasing to do so would be inconvenient in light of future legislative ambitions. Not only is this argument an insufficient justification for preserving an otherwise unconstitutional law, it is a rationalization for perpetuating voter confusion, consternation, and decreased turnout, all of which clearly run contrary to the public interest. Plaintiffs' brief, § I.B., pp. 14-15; *see* Declaration of Jesse Presnell, ECF 14-6, ¶ 3, Exhibit A.

## VIII. PLAINTIFFS ASK THE COURT TO PRESERVE, NOT DISTURB, THE STATUS QUO

In their response, Defendants describe the disfavor with which courts view mandatory injunctions, but they fail to explain why they believe the injunction Plaintiffs seek is mandatory. In fact, as explained in Plaintiffs' opening brief at pp. 6-7, Plaintiffs seek a prohibitory injunction to preserve the status quo—primary elections for partisan judicial races under N.C. Sess. Law 2016-125 and N.C. Sess. Law 2017-3 in place as of October, 2017. "To be sure, it is sometimes necessary to require a party who has recently disturbed the status quo to reverse its actions, but . . . [s]uch an injunction restores, rather than disturbs, the status quo ante." *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 378 (4th Cir. 2012) (internal quotation marks and citation omitted). S*ee also League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224 (2014) (describing how the enjoining of a law, and the resulting reinstatement of various election law features, such as same-day registration and out-of-precinct voting, was a mandatory injunction).

## CONCLUSION

Months before filing was set to begin, Defendants enacted legislation that injured Plaintiffs' rights and fundamentally changed the election of the state's judiciary. They argue that it is now too late and too confusing to change how judges are elected as Plaintiffs request. The reason: Defendants want to preserve the legislature's ability to make even later, more confusing, and more sweeping changes to how judges are elected. This internally inconsistent argument does not provide even a rational defense, and it certainly does not withstand strict scrutiny. For these reasons, Plaintiffs request that the Court enjoin Section 4(a) of Session Law 2017-214.

This the 17th day of January, 2018.

**WALLACE & NORDAN LLP**

By: /s/ John R. Wallace
John R. Wallace
N.C. State Bar No. 7374
jrwallace@wallacenordan.com
Dawn E.H. Lee
N.C. State Bar No. 49258
dlee@wallacenordan.com
Post Office Box 12065
Raleigh, NC 27605
Telephone: 919-782-9322
Facsimile: 919-782-8133

*Counsel for Plaintiffs*

**POYNER SPRUILL LLP**

By: <u>/s/ Edwin M. Speas, Jr.</u>
Edwin M. Speas, Jr.
N.C. State Bar No. 4112
espeas@poynerspruill.com
Caroline P. Mackie
N.C. State Bar No. 41512
cmackie@poynerspruill.com
P.O. Box 1801 (27602-1801)
301 Fayetteville St., Suite 1900
Raleigh, NC 27601
Telephone: 919-783-6400
Facsimile: 919-783-1075

*Counsel for Plaintiff N.C. Democratic Party*

## CERTIFICATE OF COMPLIANCE WITH WORD COUNT

The undersigned hereby certifies that the foregoing brief, exclusive of the case caption and certificate of service, contains less than four thousand five hundred (4,500) words.

This the 17th day of January, 2018.

                                      **POYNER SPRUILL LLP**

By: /s/ Edwin M. Speas, Jr.
Edwin M. Speas, Jr.
N.C. State Bar No. 4112
espeas@poynerspruill.com
Caroline P. Mackie
N.C. State Bar No. 41512
cmackie@poynerspruill.com
P.O. Box 1801 (27602-1801)
301 Fayetteville St., Suite 1900
Raleigh, NC 27601
Telephone: 919-783-6400
Facsimile: 919-783-1075

*Counsel for Plaintiff N.C. Democratic Party*

# CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel and parties of record.

This the 17th day of January, 2018.

/s/ Edwin M. Speas, Jr.
Edwin M. Speas, Jr.