IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| NORTH CAROLINA DEMOCRATIC PARTY; et al., <br><br> Plaintiffs, <br><br> v. <br><br> PHILLIP E. BERGER, in his official capacity as PRESIDENT PRO TEMPORE OF THE NORTH CAROLINA SENATE; et al., <br><br> Defendants. | CIVIL ACTION NO. 1:17-cv-1113 |

**SUPPLEMENT TO DECLARATION OF CAROLINE LIM (ECF 14-2) – TRANSCRIPTIONS OF PORTIONS OF FLOOR DEBATE FOR HB 100 AND SB 656**

HB 100

02/22

**Burr (Stanley)** 38:45 In the late 1990s early 2000s, there were efforts made to hide the political affiliation of judicial candidates from NC voters. This "created a lot of confusion" and allowed judicial candidates to win based on ballot placement or a "catchy name." Currently, district and superior court are the only offices where party affiliation is not listed on the ballot. HB100 will allow these two offices to fall in line with every other office in NC and provide critical information that can assist voters with selecting the candidate that they the voter feels is the most qualified and best for the job. By labeling party affiliation for all judicial races, I believe we will be providing the voters with a general idea of each judicial candidate's judicial philosophy.

40:30 We listened to the democratic members of the committee object to partisan elections because they claim that judges shouldn't be elected based on their party affiliation, but their own record does not match up with the rhetoric that we heard yesterday in committee. It is clear that dems efforts to remove judicial candidates 15 years ago wasn't an attempt to keep the courts from being partisan, but instead was an attempt to hide critical information from the voters, information the voters rely on when casting their ballot. To me it is clear that the members of the dem party aren't interested in nonpartisan races, they are after electing a democrat. And democrats know that their chances of electing a democratic official increase when party affiliation is not included on the ballot.

42:00 A simple search online will show that dems do support electing judicial candidates based on their political affiliation. The Orange county democratic voter guide from 2016 endorse judicial candidates not based on their abilities but simply on the fact that they're a democrat (Durham and Guilford as well). Durham democratic voter guide tells you how you should judge judges and determine who you should vote for based off 5 reasons. Political party affiliation ranks above their qualifications, their rankings, their ratings from the state bar, so they're more interested in having a democrat, "and that is certainly their right as a party, as individuals, but if it's good for them, it certainly should be good for the voters of NC to have that."

43:35 To me it is pretty clear that these voter guides that they want to make sure that the members of their party are aware of which candidate to voter for, but for some reason they seem to be hesitant about providing that information to the average voter and leave them in the dark. HB100 will correct that. In my opinion, voters deserve to have all the information available on each judicial candidate, just as they have provided on us with the ballot.


**Martin (Wake)** 44:40 Burr said that we democrats want to get democrats elected as judges, and that is true. But I also think that Republicans want to get Republicans elected as judges. But outside there is about 10 million people, a quarter of which don't have any sort of partisan affiliation and a large number of voters who are registered both republican and democrat, and it those North Carolinians we need to think about.

45:55 I know that I have no one telling me that our judges need to be more partisan. Over the year a lot of legislation has passed that we disagree with. A lot of that legislation has ended up in the courts, and whenever my side loses in court, we complain about the activist political judges that didn't vote our way. And whenever the other side loses in court, you do the same thing and complain about the partisan, activist judges who didn't rule your way.

The one thing we do agree on is that we don't want partisan, activist judges. But the bill before you today will set a system in place that guarantees you will have more partisan Republican judges and more partisan Democratic judges.

**Harris (Guilford**) 47:10 (to set forth an amendment on HB100 on page 6 line 31) Currently for an unaffiliated judge to get on the ballot they don't have to acquire the signatures that they would have to acquire to be running in a legislative or other contest. But with this bill unaffiliated candidates will now have to collect 4% of the voters in the district to get on the ballot, which is a pretty high threshold and makes it pretty difficult to get on the ballot as an independent. Amendment proposes to reduce that threshold from 4% to 2% (Amendment is adopted)

**John (Wake)** 52:10 I stand here as someone who served as a district court, superior court, and court of appeals judge. I am convinced that the judges who serve in our state are not partisan politicians. Since 1996 (for superior court) and 2001 (for district court), these judges have not been required to engage in election campaigns which threaten to blur the fine line the independence of our judicial branch and hostile elections—a line in which 7/50 states have decided to cross. The system is not broken, there is no need to fix it.

54:05 For example, to say that this year voters cannot learn the qualifications of judicial candidates belies the continuing presence of judicial candidates ratings by the NCBA and other groups, a plethora of questionnaires, and the fact of life that in this digital age, anyone can learn anything about anyone by spending a few minutes on a computer. Political partisanship is the antithesis of what we expect in a judge—fairness, impartiality, and a dedicated and determined adherence to the law.

**Jackson (Wake)** 56:10 It is important to note that I don't believe a single primary sponsor or co-sponsor is an attorney. Trial court judges are among the most important in our judicial system. There is not a strong correlation between how good a trial court judge is and what party they belong to. Most voters have no idea who to vote for in these election contests. So they either skip the race or they seek information (from a friend, a local lawyer or their local political party). That is not the number one question I get around election time.

57:45 I have never heard a voter ask for partisan judicial elections.

**Collins (Nash)** 59:50 We have voted this way for 20 years. Previous to 1996, judges were elected the same way we're trying to go back to with HB100, so for the majority of the time in NC we have elected judges the way we're proposing to do so in this bill. No one would argue that judges were more partisan before 1996 than they have been since then.

2

1:00:38 It would shock me that if anyone believes that if we had to run without disclosing our political affiliation in the general assembly, that I, for instance, would be a less partisan person than I am right now. I think there should be full disclosure in government. The voters have a right to know everything they can about a person

**Jones (Rockingham)** 1:01:22 Every single election cycle, the number one question that I hear from the citizens of my district is tell me something about the judges, I want to know about the judges. Political party isn't the most important information. But it is important that we put on the ballot for members of this body, the president, governor, for many other offices that we deem important enough to let the voters know.

1:02:10 There are some who feel like prior to 1996, the judiciary was broken and the decisions that were made at that time were all partisan. But I don't think there is anybody here who really believes that. There are a lot of people who are in the know. But there are a lot of people who aren't, and they ought to have that information on the ballot. It really comes down to whether or not we trust the voters. There are times when people cross party lines because they recognize experience, or character. Citizens in NC are quite famous for doing that; they tend to split their ballots, and I think we saw that in this last election cycle.

1:04:30 I don't believe that just because someone's political party is written on the ballot that it changes their character, makes them more partisan, makes them less qualified to serve.

**Yarborough (Person)** 1:05:00 We claim to emphasize the importance of educating the voters, but that is not the case. We emphasize on getting the voters to the polls, whether they know what they're voting for or not. For most cases, there are two pieces of information on the ballot: name and party affiliation. So by not having the party affiliation, you cut back on 50% of the information that most of them would use to make their choices.

**Blust (Guildford)** 1:06:07 Rep. Jackson has asserted that in Wake, because Wake went for Cooper, that those same voters will vote for every single Democrat judicial candidate over every Republican, and I don't think that necessarily follows. I have knowingly voted for a democrat over a republican in a judicial race, so it is not a given that the decision will be made solely upon party.

1:07:15 The notion that voters will research and find the judicial philosophy about judges, but the same people that assert that here will also assert that those voters can't get an ID, can't find their own local precinct, and can't register by the deadline, "and I just find that amazing that one time when it is suitable, these voters are amazing at what they can do, and another time you can't expect them to even find their precinct."

**Reives (Lee)** 1:08:10 I don't understand where we got to a point where we didn't want judges to be independent. I don't understand where we got to a point where we believe the people writing our constitution were mistaken and that judicial races should be partisan. The reason the judiciary is a separate branch is because they're the referees.

1:09:15 I would agree that this wouldn't change their philosophies, but I would say that you would want your judiciary to actually not be partisan. The judges are pretty good at hiding their preferences. But once you make them label themselves, you are making them subservient to their party's philosophy.

1:10:30 I haven't met anyone in my district saying they want judges to be more partisan.

**Blust question for Reives** 1:10:59 No one in favor of this bill is asserting that they want judges to be more partisan. They are simply asserting that the public ought to know what already exists.

**Reives** 1:11:30 The reality is you make them partisan and make them part of a system that doesn't work as well as it could. If you want to give information the parties, I think the parties already do a pretty good job based on what was said today.

**Pittman (Cabarrus)** 1:14:50 One of the rights that our citizens have is full information. A vast majority of my constituents ask me when I'm out campaigning is if they're a republican or democrat. People need that information. Often they don't avail themselves of all the information that is out there. If they want to know if that candidate is a republican or a democrat, it is a lot simpler to put it on the ballot.

**Speciale (Craven)** 1:16:26 "The road to judicial victory runs through the county and congressional party offices." I don't know of any judicial candidate that didn't win through county offices and letting everyone know their party affiliation. "Even when you get some of these guys in front of you and try to ask them questions, a lot of times they'll say they can't talk about it because it's something they might rule on." So trying to figure out their judicial philosophy by asking them questions, might not be straightforward. Part of that is because in 1981 they changed the law and now you have to be a lawyer to be a judge—before that we didn't have that problem.

1:17:30 A lot of money is spent to print cards that get handed out at all the polling places to tell people which judges are Republican and which are Democrat. A lot of money will be saved from having to print those cards. People don't have time to research all of the judicial candidates. They know nothing about the judicial candidates. If the only thing that they know is the judge's party affiliation, that at least gives the voters some bit of information they otherwise might not get.

1:19:30 When I go to the polls, I look for the best candidate running and that's who gets my support, regardless of what party they are. But sometimes the only information you have on them is their party affiliation. We need to give this information to our citizens if they don't have time to look themselves.

**Jones (Rockingham) question for Burr (Stanley)** 1:20:00 Is there anything in this bill that amends/changes the state constitution in any way?

**Burr** There is not. In N.C we had partisan judicial elections for 130-140 years where it seemed to work fine for the members of the other party until Republicans started winning.

4

**Jackson (Wake)** 1:21:00 A democratic judge got to go to the local county party because it's nonpartisan so they invite anyone. If we go back to being partisan, the Republican party is only going to invite republican judges (same for Democrats). For those of you who want to add information, how about considering adding the judicial score, tell people how long they've been practicing, whether they're incumbents. There are better, nonpartisan ways to provide voters with information on the candidates.

**Butler (New Hanover)** 1:23:26 Judges are capable of forging settlements and fostering resolutions to challenges and disagreements. My observations of this body prove that we don't do such a good job at that. We should leave judges above the fray here and let them remain impartial and do their jobs.

**Jones (Rockingham)** 1:25:00 What they (judges) do is important and what they are is important. I would just make the point that one of the major roles of political parties is to sort through candidates in a primary way so that the best candidates can go forward in the fall so that you don't have a situation like a couple years ago in a nonpartisan judicial race where there were 19 candidates on the ballot and leave it possible for someone to win with less than 20% of the vote. Over the years and in the last election, look at the amount of "undervoting" in these nonpartisan judicial races. We need this information to inform the voters.

Bill sent to senate.

03/08

**Burr (Stanley)** 19:36 Just to run through briefly the changes that the Senate made. The first change relates to the amendment that Rep. Harrison made. They simply changed the time in which an unaffiliated candidate has to submit their petition to the BOE moving to last Friday of June to the second Wednesday prior to the primary election. The other change is a technical change in section 11.

**Jackson (Wake)** 21:03 The bill did not get any better when it went over to the Senate and came back over here.

**Harris (Guilford) question for Burr** 21:33 Does this date change affect all unaffiliated candidates or just the candidates from the superior and district court?

**Burr** It appears to affect all unaffiliated candidates.

03/22

**Burr (Stanley)** 13:50 I move that the House pass HB100 notwithstanding the objections of the Governor. I am asking for all members vote to override Cooper's veto of HB100, a bill which provides the political affiliation of each judicial candidate listed on the ballot, thus giving all of the voters of NC a general idea of each judicial candidate's judicial philosophy when casting their ballot. Since the 1990s NC voters have been disenfranchised by the removal of the political affiliation of each of the judicial candidate's affiliation on the ballot, and this will restore that. You don't have to go back that far to show that the law we're attempting to change by reinstating the partisan makeup on the ballot for district and superior court…last year the 2016 elections show that in NC for supreme court, there were 800,000 fewer votes cast for the NC supreme court race than were cast for the presidential election. Of those 800,000, 500,000 of those individuals that skipped the Supreme Court race went down to the very next race on the ballot (court of appeals) and voted. So 500,000 of those 800,000 skipped over a race where the political affiliation wasn't marked and voted in the next race where it was clearly identified where those candidates stood with their political party. I am sure you'll see same thing for the district and superior court.

16:30 This bill will correct that. It will restore the rights of the voters to know who they're voting for and to identify which party these judges stand with. I would ask for you to vote for this to give the voters of NC this valuable piece of info that they have for every other state office in NC.

**John (Wake)** 17:20 The stated justification for this bill, that it generates some information on the judicial candidates, is easily refuted by the ubiquitous internet availability of detailed information about any individual, including that individual's voter registration status.

**Martin (Wake)** 23:27 I do agree with Burr about the significant drop off that we see on the ballot as we go down to the judicial races. We also see this in our legislative races. Burr and I would also agree that we do not like judicial activism. In the end, the problem with this bill is that it sets up a process where we will have more judicial activists, both Democrat and Republican. If what we seek is judicial independence, we (this bill) are making it more difficult to make independents/unaffiliated candidates to get elected.

**Richardson (Cumberland)** 26:00 It is a direct contradiction of the oath judges take to make these races partisan.

**Blust (Guildford)** 28:26 I don't disagree with the notion that judges should not be partisan in their actions, their heart, their mind, the application of the law. That is not what is at issue. Judges are what they are. Even now under the law the way it has been, these judges are registered (when registered to vote) under a political party. That registration exists already. So this bill will not change that. So if they're violating an oath, they must be violating an oath even to register at all. So that can't be the case. All this bill is going to do is to put that R or D or U beside their name on the ballot, so that people voting will know that information. Right now that information exists but most voters don't know that information. This bill is just letting the public know what already exists. The judges that are democrat and republican

go to their local parties already and show up at meetings, solicit report, and tell them to vote for them. It already exists, so it is inaccurate to say this bill creates the partisanship.

**Quick (Guilford)** 31:41 At some point the partisan divide of NC has to end. If there is any elected positon in our state that should not have political affiliation tied to it, it should be the judiciary.

SB656

10/17

**Lewis (Harnett)** 3:35 I move that the House pass SB656 notwithstanding the objections from the Governor. This legislation opens the door for more participation in our electoral process for third parties and unaffiliated candidates. NC currently has some of the most restrictive ballot access laws in the nation, and parties that were able to secure a place on the ballot in dozens of other states have been kept away from NC voters who might choose them due to a system that was designed to protect the party in power.

4:30 By lowering the petition requirements and providing additional ballot access methods, we are removing many of those barriers, so that voters will have more choices. The Governor's stated objections have nothing to do with this bill. He claims that this legislation will move us towards a merit selection system of judges. That is a proposal, ironically, he wholeheartedly supported when the democrats controlled all levers of power in the state. In fact, not only did he vote for merit selection, he was chairman of the Senate judiciary committee that pushed it through the Senate. The only thing that has changed is that his party doesn't completely run the show anymore. So the Governor has abandoned one of his longstanding positions. Regardless, I was on the conference committee and I can assure you that there is nothing in this bill that would establish a merit selection system.

5:30 Going back to the bill itself, it is important to understand that third and fourth parties will have an additional method to qualify for NC ballots. More participation in the political process is what this bill seeks to obtain. This legislation also removes an antiquated and troubled relic from our election system where candidates must secure 40% of the vote in order to prevent an expensive low-turnout second primary. We've lowered that threshold to a more manageable 30%. This will save our counties, candidates, and state time and money while still requiring a candidate to demonstrate relatively broad appeal in order to secure their party's nomination.

6:20 Finally, in recognition of the fact that if HB 717 is enacted, it would make substantial needed reforms to our judicial districts, this legislation eliminates the upcoming judicial primary and delays filing until late June. Candidates can file for ballot for judicial branch races much like they did during last year's court of appeals race. We were asked by many stakeholders in the judicial community to take our time with judicial redistricting and get it right, and delaying filing will allow us to do just that. In short, this legislation makes needed reforms to our ballot access and primary laws, and gives judicial candidates time to analyze any forthcoming changes that the General Assembly may make.

7:00 I urge my colleagues to override Governor Cooper's misguided veto.

**Martin (Wake)** 7:10 Let me first talk about the portion of this bill that deals with opening up ballot access to other parties. When I first got here in 2005, it seemed to me that one of the few things that members of my party and members of the current majority party could agree on is that we both wanted something of a monopoly of the ballot for our parties. We would disagree on everything else but agree

on that and voted accordingly. But several measures have been proposed which would open up ballot access to other parties and I have been pleased to support most of them and I do support that portion of this bill here, and had that been the only portion of it, I would have voted for it.

7:55 But I do want to briefly talk about the other portion and I'll leave it to my more learned colleagues to discuss what's really wrong..what this does to judicial elections, so let me just talk on a couple of broader issues. First of all, the bill does not directly take a step towards any sort of alternate selection process of judges. But let me make it very clear that the process that the Governor supported back when he was a senator is very different from what's being floated in a separate bit of legislation now in the general assembly. What the then senator Cooper supported was something that I think could legitimately be called a merit selection of judges. What this general assembly is currently advocating for is legislative selection of judges. I think most folks in the public would agree that very little has come out of this general assembly…

**Lewis (Harnett) interrupts** 8:40 Before I rise to a point of order to ask if the gentleman is speaking about the bill, I wonder if he would yield to question and quote me the bill number that he is referring to that deals with merit selection.

**Does the gentleman from Wake yield to the gentleman from Harnett?**

**Martin (Wake)** 9:05 I do not.

**Lewis (Harnett)** 9:10 I believe the House is discussing if SB656 should be enacted into law over the objections of the Governor. I do not believe the gentleman's remarks are related to anything contained in the content of SB656.

**Jackson (Wake)** 9:35 I wanted to speak on the point of order. I believe it was Chairman Lewis who actually brought up the Governor's actions back in the 1990s, and I would ask for a little leeway for us to counter points made by Chairman Lewis.

**The chair will simply ask all members to focus the comments related to the bill. The chair does try to give some leeway and recognizes that in the Governor's veto message, the Governor references something that also had nothing to do with the bill.**

**Martin (Wake)** 10:10 I hadn't intended to bring that up until Lewis did, and I think I've appropriately addressed and rebutted his remarks. So let me move on now to a broader concept and one of the big problems with this bill. The process by which we are extending access to the ballot for other parties is something we've added to most but not all elections in the state. I don't claim to know too much about leadership, but I've been taught by some folks that do. And one of the top things that they've taught me about leadership is that you must lead by example. That if you aspire to be a leader you must take on yourself to bear any burden that you attempt to place on those you serve. And one of the problems with this legislation is that this opening up of the ballot to other parties is not something that we as leaders burdened ourselves with. If we're going to open up the ballot to third parties, let's take it upon ourselves to do it for our own elections. If it's good enough for statewide elections, then why isn't it

9

good enough for us? In my mind that failure of leadership is enough reason for us to vote against this veto override.

**Jackson (Wake)** 11:40 Chairman Lewis, can you tell me from what part of HB 717 the judicial redistricting that is the bill that is being cited as the need to get rid of these judicial primaries, which part of that bill affects the court of appeals or supreme court races for 2018?

**Lewis (Harnett)** 12:08 I believe the delay in the judicial filing would affect all of the judicial offices. So if there were judicial offices that fell under that section of the constitution in the judicial branch, then this would seek to delay the filing for those offices.

**Jackson (Wake)** 12:35 Are we in any way doing any redistricting to the court of appeals or to the NC supreme court?

**Lewis (Harnett)** 12:43 I appreciate your question. I am certain you are aware that the districts for the state supreme court are statewide so certainly there is no redistricting that would apply in that case.

**Jackson** 13:06 Then why would it be necessary to eliminate primary votes for the court of appeals in the NC supreme court?

**Lewis** 13:16 As I said, this bill delays the filing for all judgeships. We don't know exactly what will emerge in terms of how the districts will look and what the filing period will look like when we return to finish this work in January. What we do know is that the uncertainty that would be created by proceeding to allow district court judges and superior court judges to continue down a path of going to file for a seat that may be changed is not the right thing to do. Therefore, this bill delays the filing for all judges in the state.

**Jackson** 14:02 I guess my question is why can't court of appeals judges and supreme court justices just file when we file in February. There wouldn't be any problem; they don't have any uncertainty about their district changes, so why can't they just file when everybody else files?

**Lewis** 14:23 I think that is something you can certainly propose when we return in January.

**John (Wake)** 14:40 The constitution of the state of NC provides for a separate, independent, co-equal judicial branch of government. Behind the veil of increased ballot access, this bill makes a mockery of the selection process for members of the judicial process. It creates a multiple candidate process, whereby as we have historically seen, the prevailing candidate receives but a small percentage of the vote. In our state there have been at least 3 instances in the past 16 years in which judicial primaries were not used. In each instance, the winner was elected with under 24% of the vote.

15:30 In November 2004 the prevailing NC supreme court won over 7 other candidates with 22.59% of the vote. In November 2010, the prevailing candidate in the Court of Appeals election won over 12 other candidates at 20.33% of the vote, and then lost in a runoff election. And most recently, the most egregious example that we all remember well, in November 2014, 19 individuals ran for an open court of appeals seat, and the prevailing candidate one with 23.84% of the vote.

16:20 Former UNC school of government Professor Michael Kroll says that the first year that it changed, no matter how small is implemented in an election, it has tendency to attract lots of candidates. Everybody who ever thought about running comes out of the woodworks, says Kroll. Everybody is going to run. Expiration terms show that there will be 1 Supreme Court race, 3 court of appeals races, more than 30 superior court races, and more than 115 district court races in the 2018 election. How many pages would that ballot be if only three candidates not 19 ran for each of those judgeship positions? Longer ballots generally mean less voter participation. Professor Kroll points to the 2012 election as an example. He notes that 4.5 million North Carolinians voted for a president in that election over 4.3 million for superintendent for public instruction that by the time the voters got down to the Supreme Court ballot, only 3.5 million were voting and the number was even lower for the Court of Appeals seats. These were simple one-on-one judicial elections—fairly easy choices. How many voters will skip all judicial elections when they see a multiplicity of unfamiliar names? The process created by this bill is an embarrassment. We should not want our names associated with this process. No valid reason has been advanced for this bill. The judicial redistricting bill that we considered on multiple times and multiple occasions was given an opportunity for delay and deliberate consideration. I stood on this floor and asked for a deliberative process for that bill. Again, this bill is an embarrassment.

**Morey (Durham)** 18:52 What is being considered today is called the Electoral Freedom Bill. I think it should be called the Electoral Chaos Bill because that's exactly what's going to happen. I do support two provisions of the bill, lowering the threshold to prevent runoffs from 40% to 30%, and easier access for unaffiliated voters. That is very important. But the easier access does not apply to legislative seats. At the last minute, this bill was changed, and poison was dropped into it, which delays the filing only for judges and eliminates primaries. We are putting the cart before the horse with this bill because it is all based on speculation of what is to happen in the future. It is all based on 717 that hasn't even been considered by the Senate. It is based on speculation if it passes. "Let's give people time to assess new new districts and delay their filing until June". It's speculating. It's speculating also what will happen in January when we have been told we will take up constitutional amendments. And everyone knows one of those constitutional amendments could be merit selection—another speculation.

20:29 We're being asked to vote on something that is going in quicksand. And the flaws of this, as Rep. John just said, is voter chaos. Unlimited number of people for state judicial races, local judicial races, pile on. Those ballots are going to look like small books. Do we really want an informed electorate to go through the names and find John Wayne and that sounds good and let's vote him into office with 20% of the vote? Responsible governing by this GA should never create mass chaos for voters, and that's exactly what is happening in this bill. It is smoke and mirrors for something yet decided. I ask you to stop this trainwreck that is affecting our judiciary. It has been deliberate. We have gone from nonpartisan to partisan. We've gone to drawing new maps, double bunking. Now we're going to delay the filings and eliminate the primaries. And we know what's coming up in January. I ask you to sustain the Governor's veto.

**Ball (Wake) question for Lewis** 22:10 When we were on the floor earlier debating HB 717, I posed a question to you about the fact that in the past, we had allowed for primaries as late as August, even September, and if the purpose of this electoral freedom bill is to allow those people who might want to

11

file for judicial seats and also for the people voting for them to have the time to prepare, I asked you the question if we could consider doing that and you responded to me, I believe I recall, that you were looking into that. Could you give me the progress of that?

**Lewis** 23:03 When you asked, you did remind me that we've had primaries as late as August before, and I committed to you that that was something we would take a look at in January when we return.

**Ball** 23:20 Could I ask then how that consideration in January will impact this current bill, what the plans might be? It seems to me that we might consider waiting till then to consider this override.

**Lewis** 23:40 As I tried to say in my debate and also for the question from the gentleman from Wake, the intention is to make known that there are very likely going to be changes to the districts in which these judges run in. So we are trying to delay the filing to make sure that we have time to study the different options that are out there, to let the Senate continue to work with HB 717 and delaying the filing for judges is the most prudent way to accomplish that.

**Jackson (Wake)** 24:45 I'll just say that I agree with sections 1-3 of the bill. I think we should apply them to the legislature as well, but I understand the argument about why that wasn't necessary. So I will just put my comments on the procedure and section 4. And I hope that at some point we start to look at how we are not treating conference reports. Section 4 of SB656 is a perfect illustration. It eliminates the primaries for every judgeship in NC. That's a big deal by any measure. It was never in any previous version of SB656 that I saw. It's not related to any previous version of SB656; it's not been filed as a bill or offered as an amendment by any member of this body or the Senate as best as I can tell. Eliminating judicial primaries was never worked on in regular committee with the opportunity to hear public input. And most importantly, members of this body had no opportunities to make any amendments. Although apparently I can do that when we come back in January. Basically leadership made a decision about what would be in SB656. The rest of us have no say in that matter.

26:04 Rule 44B says that only matters that are disputed between the chambers shall be considered by the comperes (sp?), but it only operates if the Senate has a similar rule, which of course they don't. It's not the way the Democrats used to do things. We did not bind ourselves to what the Senate's sense of fair play was back in the day. So my question is why would we do so today? I've talked to people here much longer than I have been today, lobbyists, legislators, and staff, all agree that conference reports have never been abused the way they are routinely abused now. What's the big deal you say? The ends justify the means. Sometimes you just want to come in and get things done and not waste a lot of time. Well the big deal is we adopt rules to protect all 120 of us. The rules give us all a voice and a roll in that process. My role is to sometimes stand up and point out when you're abusing those roles. If a bill goes to conference and the House says A and the Senate says B, then we had a role in A. What's your role when the conference report comes back with C? That's what happened in this bill with the elimination of judicial primaries. 4-5 people made a decision; the rest of us are spectators. We're not representatives. And you've heard us talk about legislative selection of judges, and I have to wonder is that what that will be where 4-5 people are making decisions and the rest of us are spectators? As I've said, eliminating these primaries is a big deal. It could have been handled in our normal process a lot of

12

different ways, including the way HB717 was just dealt with over the last month. Why wasn't this issue in fact in that bill so it could be debated? Or even in another bill. We've been in session a long time; we've had plenty of time to open up debate. We can still do the right thing and sustain the Governor's veto and come back here in January before filing opens, and have these debates and tackle these issues. Until then, it is very clear why the Supreme Court and the Court of Appeals are included in this bill, and that's for partisan gain because of one particular justice.

28:22 Last year in 2016 we tried the retention route. The Court struck that down. We lost a Republican judge. So this year we've come in session, we've added party ID, apparently we're not sure that that's going to be enough to get the incumbent this year who's also a Republican across the bar. So now we're eliminating primaries so that hopefully only the incumbent will file from one party and several people will file from the other party, and we'll have a jungle race. The winner will get 30-40%, but as long as it's a Republican, the ends justify the means.

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel and parties of record.

This the 18th day of January, 2018.

/s/ Edwin M. Speas, Jr.
Edwin M. Speas, Jr.