IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| NORTH CAROLINA DEMOCRATIC PARTY; et al., | |
|---|---|
| Plaintiffs, | |
| v. | CIVIL ACTION NO. 1:17-cv-1113 |
| PHILLIP E. BERGER, in his official capacity as PRESIDENT PRO TEMPORE OF THE NORTH CAROLINA SENATE; et al., | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM REGARDING *WASHINGTON STATE GRANGE V. WASHINGTON STATE REPUBLICAN PARTY***

By order dated January 24 the Court provided the parties an opportunity to file a short brief discussing "whether and how the Supreme Court's decision in *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442 (2008), should affect the analysis in this case, particularly as to whether the plaintiffs have associational rights that are burdened by Section 4(a)." Text Order, January 24, 2018. That case (hereinafter "*WSG*") was cited twice in Plaintiffs' earlier briefs. A more focused analysis of that case cements the strength of Plaintiffs' claims and the likelihood that they will prevail on the merits at trial.

**I.    Section 4(a) is unique from the electoral regulations at issue in both *California Democratic Party v. Jones* and *WSG* but is more like *Jones* than *WSG*.**

In examining Section 4(a), it is important to bear in mind the differences among the electoral regulations considered in *Jones* and *WSG*, and the electoral regulation at

issue here. In *Jones*, which was not overruled by *WSG*, California used a two-tiered system to elect candidates to state office. The first tier was a blanket primary at which all voters regardless of party affiliation could participate in selecting the nominees of the major parties for the general election. *Cal. Dem. Party v. Jones*, 530 U.S. 567, 570 (2000). The second tier was the general election at which the candidates for each party who won a plurality of the votes cast at the primary election became that party's nominee in the general election. *Id.* In *WSG*, Washington likewise used a two-tiered system. *WSG*, 552 U.S. at 447. The first tier was a blanket primary but, unlike California's blanket primary, Washington's primary did "not serve to determine the nominees of a political party" but rather "to winnow the number of candidates to a final list of two for the general election." *Id.* at 453. Consistent with the purpose of the primary, "the top two candidates from the primary election proceed to the general election regardless of their party preference." *Id.*

In stark contrast to the California and Washington systems, North Carolina's legislation has eliminated primary elections for judges in their entirety for the 2018 elections. In other words, North Carolina, unlike Washington and California, has substituted a one-tiered election system for a two-tiered system. And unlike the Washington system, which by its own terms did "not serve to determine the nominees of a political party," the North Carolina system will result in the election of the Democrat or Republican candidate from a potentially long list of candidates who receives the highest

2

number of votes. In other words, North Carolina, unlike Washington, has substituted a partisan lottery for an orderly election process.

## II. *WSG* confirms that Plaintiffs prevail under the *Anderson-Burdick* test.

In both *Jones* and *WSG* the Court applied the *Anderson-Burdick* test to determine the validity of the California and Washington regulations, thus affirming that the validity of North Carolina's regulation must be evaluated by that same test.

In *Jones*, the Court subjected the California system to strict scrutiny because it imposed a severe restriction on the major parties' associational rights to select their standard bearer and concluded that the regulation was invalid both because it did not serve any compelling interest and, because the state could accomplish its purposes by other means, it was not narrowly tailored. 530 U.S. at 582, 585.

In *WSG*, the Court concluded that the Washington system was not subject to strict scrutiny because, as noted above, it did not serve to determine the nominees of a party but rather to winnow the number of candidates to a final list of two regardless of their party affiliation. *WSG*, 552 U.S. at 458. The Court did not however determine that the Washington system imposed no burden on political parties and thus was valid without regard to the justification for the regulation. Citing *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997), the Court observed "[w]hen a state electoral provision places no heavy burden on associational rights, a State's important regulatory interest will usually be enough to justify reasonable nondiscriminatory restrictions." *Id.* It then concluded that Washington's interest "in providing voters with relevant information

3

about the candidates on the ballot" was sufficient to sustain the burden it imposed on the parties. *Id.* In sharp contrast, North Carolina's elimination of primaries dilutes the information available to voters, confuses them, and clutters the ballot.

*Jones* and *WSG* thus establish two grounds on which Plaintiffs have established that they are likely to succeed on the merits of their First Amendment claim.

First, Plaintiffs are likely to succeed on the grounds that eliminating primaries imposes a severe burden on Plaintiffs' associational rights not justified by some narrowly drawn compelling interest. Nothing in *WSG* modifies the express holding in *Jones* that the decisions of the U.S. Supreme Court "vigorously affirm" that regulations infringing on the capacity of a political party "to select its standard bearer" for the general election are severe and can only be justified if narrowly drawn to serve some compelling interest. Moreover, Section 4(a) also denies Plaintiffs the lesser right to endorse candidates on the general election ballot. As counsel for the State acknowledged at the hearing there is no mechanism by which that can occur. The judicial candidates listed on the general election ballot—with an "R" or a "D" by their names—will appear exactly like the candidates for other partisan offices who are in fact the nominees of their parties.[1]

Second, even assuming that the burden imposed on Plaintiffs by the elimination of primaries is less than severe, Section 4(a) remains invalid because Defendants have failed to establish, as they must under *WSG*, that eliminating primaries serves some "important regulatory interest" and is narrowly tailored to serve such interest. The sole interest

---

[1] This is different from *WSG*, where the Court expressed concern that it did not know how the names on the ballots would appear. 552 U.S. at 455.

4

Case 1:17-cv-01113-CCE-JEP   Document 40   Filed 01/26/18   Page 4 of 7

asserted by Defendants to justify the elimination of primaries is to allow the 2018 judicial elections to be held under new districts that <u>might be enacted</u> this legislative session and that <u>might not be enacted</u> in time to allow primaries to be held before the November 2018 general elections. This is purely for legislative convenience and surely does not rise to the level of an "important regulatory interest." Moreover, Defendants have failed to establish that the elimination of primaries is even narrowly tailored to meet their convenience. Infringing Plaintiffs' rights could be avoided entirely by revising district lines sooner or by postponing the effective date for any redrawn districts to January 1, 2019. The failure of narrow tailoring is particularly evident with regard to the elimination of primaries for the 2018 appellate court elections. There is no connection whatsoever between the elections of appellate judges and the drawing of new judicial districts. Appellate judges are elected statewide, not by district. Nothing in *WSG* changes Defendants' failure to show any important regulatory interest sufficient to justify the infringement on Plaintiffs' ability to select their standard bearers.

This the 26th day of January, 2018.

**WALLACE & NORDAN LLP**

By: /s/ John R. Wallace
John R. Wallace
N.C. State Bar No. 7374
jrwallace@wallacenordan.com
Dawn E.H. Lee
N.C. State Bar No. 49258
dlee@wallacenordan.com
Post Office Box 12065
Raleigh, NC 27605
Telephone: 919-782-9322
Facsimile: 919-782-8133

*Counsel for Plaintiffs*

**POYNER SPRUILL LLP**

By: /s/ Edwin M. Speas, Jr.
Edwin M. Speas, Jr.
N.C. State Bar No. 4112
espeas@poynerspruill.com
Caroline P. Mackie
N.C. State Bar No. 41512
cmackie@poynerspruill.com
P.O. Box 1801 (27602-1801)
301 Fayetteville St., Suite 1900
Raleigh, NC 27601
Telephone: 919-783-6400
Facsimile: 919-783-1075

*Counsel for Plaintiff N.C. Democratic Party*

# CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel and parties of record.

This the 26th day of January, 2018.

/s/ Edwin M. Speas, Jr.
Edwin M. Speas, Jr.