IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:17-CV-1113

| | |
|---|---|
| NORTH CAROLINA DEMOCRATIC PARTY; CUMBERLAND COUNTY DEMOCRATIC PARTY; DURHAM COUNTY DEMOCRATIC PARTY; FORSYTH COUNTY DEMOCRATIC PARTY; GUILFORD COUNTY DEMOCRATIC PARTY; MECKLENBURG COUNTY DEMOCRATIC PARTY; ORANGE COUNTY DEMOCRATIC PARTY; and WAKE COUNTY DEMOCRATIC PARTY,<br><br>                          Plaintiffs,<br><br>v.<br><br>PHILIP E. BERGER, in his official capacity as PRESIDENT PRO TEMPORE OF THE NORTH CAROLINA SENATE; TIMOTHY K. MOORE, in his official capacity as SPEAKER OF THE NORTH CAROLINA HOUSE OF REPRESENTATIVES; THE STATE OF NORTH CAROLINA; THE NORTH CAROLINA BIPARTISAN STATE BOARD OF ELECTIONS AND ETHICS ENFORCEMENT; and KIMBERLY STRACH, in her official capacity as EXECUTIVE DIRECTOR OF THE NORTH CAROLINA BIPARTISAN STATE BOARD OF ELECTIONS AND ETHICS ENFORCEMENT,<br><br>                          Defendants. | **DEFENDANTS' BRIEF IN SUPPORT OF THEIR EMERGENCY MOTION FOR STAY OR MODIFICATION OF PRELIMINARY INJUNCTION PENDING APPEAL** |

## Introduction and Nature of the Matter

This Court entered a preliminary injunction partially staying Section 4(a) of North Carolina Session Law 214, which eliminated primaries for local and statewide judicial elections in 2018. The Court has only enjoined Section 4(a) as it relates to elections of appellate judges. By doing so, the Court has created a confusing bifurcated system of judicial elections on the eve of the election cycle. While North Carolinians will elect *trial* judges without a primary in 2018, they now must also vote in primary elections for *appellate* judges under the Court's Preliminary Injunction. This is not a preservation of the *status quo*, but the imposition of a new normal on a scant record and without regard for the State's broad discretion to regulate its own judicial elections.

Defendants Philip Berger, in his official capacity as President Pro Tempore Of the North Carolina Senate, and Timothy K. Moore, in his official capacity as Speaker Of the North Carolina House of Representatives ("Defendants"), move the Court to stay or modify its Order under Fed. R. Civ. P. 62(c) on an emergency basis to avoid this confusion and disregard for the Legislature's policy decision. Only ten days before the election cycle is simply not enough time for judicial candidates to reverse course and file to be listed on the primary ballot, for the State to educate potential candidates, or for the State to educate North Carolina voters about the Court-imposed, two-tier system for electing their judges in 2018. The time constraints of this case present the Court with the quintessential irreparable harm necessary to mandate a stay. Accordingly, Defendants respectfully

request the Court stay or modify its Preliminary Injunction pending appeal to the United States Court of Appeals for the Fourth Circuit.

Defendants respectfully request the Court rule on this Motion as expeditiously as possible given the opening of the election cycle in ten days. Defendants request that Plaintiffs file a response, if warranted, on Monday, February 5, 2018, or Tuesday, February 6, 2018, before noon.

## Background and Statement of Facts

In October 2017, the North Carolina General Assembly passed Senate Bill 656, which was ratified over the Governor's veto. 2017 N.C. Sess. Laws 214. As the Court correctly explains, the General Assembly eliminated primaries for judicial candidates seeking election to the district courts, superior courts, and the appellate courts in Section 4(a) of the Act. (Prelim. Injunction at 5, ECF No. 45.) For those judicial offices, candidates would only run in the general election, 2017 N.C. Sess. Laws 214, § 4(a), requiring only a plurality of the vote to win, *id.*, § 4(k). This change applies for the 2018 elections only, *see* 2017 N.C. Sess. Laws 214, § 4(a), and affects roughly four appellate court races and 140 trial court races. (Prelim. Injunction at 5, 8.)

Unlike candidates for other political offices who must register from February 12–28, 2018, *see* N.C. Gen. Stat. § 163A-974, the Act requires judicial candidates to file their notice of candidacy from June 18–29, 2018, 2017 N.C. Sess. Laws 214, § 4(a). The Act schedules the general election for these judicial candidates for November 6, 2018. *Id.*

Despite its passage in October 2017, Plaintiffs waited until December 12, 2017, to file their Complaint (ECF No. 2) and Motion for Preliminary Injunction (ECF No. 14). Plaintiffs sought to enjoin Defendants from enforcing Section 4(a) of the Act, which Plaintiffs characterized as "anti-democratic legislation." (*Id.*) After initial briefing, a hearing, and supplemental briefing, the Court granted Plaintiffs' motion, but enjoined Section 4(a) only as it applies to appellate judicial elections—the North Carolina Supreme Court and the North Carolina Court of Appeals. (Prelim. Injunction at 5, 27.) The Court did not enjoin Defendants from enforcing the Act for judges of the State's trial courts—Superior Court and District Court. (*Id.*)

By enjoining only part of the Act, the Court bifurcated the State's 2018 judicial elections, severing appellate races from trial-court level races. While candidates seeking local office need not file their Notice of Candidacy until June 2018, the Court's order now requires candidates seeking statewide office to file their Notice of Candidacy in ten days. N.C. Gen. Stat. § 163A-974. With this deadline quickly approaching, Defendants are left with no less-drastic a remedy than to seek a stay of the Court's Preliminary Injunction under Fed. R. Civ. P. 62(c), (Emer. Mot. Stay Pending Appeal, ECF No. 48), following filing their Notice of Appeal (ECF No. 47).

Because of the exigent nature of the circumstances, including that the 2018 election cycle begins in less than ten days, Defendants request a ruling on this Emergency Motion as soon as practicable after receiving any response from Plaintiffs, so that Defendants can immediately seek similar relief from the United States Court of Appeals for the Fourth

Page 4 of 19

Case 1:17-cv-01113-CCE-JEP   Document 49   Filed 02/02/18   Page 4 of 19

Circuit if necessary. *See* Fed. R. App. P. 8(a)(1). The compressed time table for review in this Court may, indeed, be impracticable. However, Plaintiffs' delay in bringing their Motion for Preliminary Injunction has compressed the time for review.

## Question Presented

Whether this Court should stay or modify its Preliminary Injunction altering the manner by which appellate judges are elected in the 2018 election cycle that opens in ten days.

## Argument

"While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(c). A court must consider four factors when considering whether to issue a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).[1] Each factor need not be established beyond some insurmountable threshold, though. For example, Defendants

---

[1] The proper standard for such equitable relief pending appeal is in flux within the Fourth Circuit. *See Does 1-5 v. Cooper*, No. 1:13-cv-711, 2016 WL 10587195, at *1 (M.D.N.C. Mar. 2, 2016) (noting conflict between *The Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342 (4th Cir. 2009) and *Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970)). Regardless whether the Court applies the stricter *Truth About Obama* test or applies a sliding scale, Defendants make a proper showing that a stay is warranted here.

must only show that the irreparable harm is a *probability*, not inevitable. *See Lair v. Bullock*, 697 F.3d 1200, 1214 (9th Cir. 2012).

These stay factors "contemplate individualized judgments in each case," and should not be "reduced to a set of rigid rules." *Hilton*, 481 U.S. at 776; *accord Nken*, 556 U.S. at 433. When the Court applies the stay factors to the specific circumstances here, a stay is warranted during appeal. Thus, the Court should grant Defendants' Motion to avoid further disruption of the 2018 judicial elections.

I. **The eleventh-hour nature of the preliminary injunction and its interference with a lawfully enacted state statute cause irreparable harm.**

Defendants and North Carolina voters have already been harmed by the Court's ruling on the eve of the 2018 election cycle. The Court has mandated a policy shift that is both confusing and unprecedented. Because of the timing of the Court's ruling, voters do not have enough time to evaluate how the Court's policy change affects the election of their appellate judges and likely cannot reconcile how that policy change now differs from the election of their trial-level judges. Except for the portion of the electorate who would consider themselves represented by Plaintiffs, North Carolina voters, acting through the General Assembly, have been stripped of their ability to determine how best to elect appellate judges in 2018.

The harm caused by the Court's Preliminary Injunction is more than just an existential attack on the voters' ability to engage in the legislative process. For over fifty years the United States Supreme Court has instructed Courts to consider the disruption to the elective process from a timeliness perspective: "In awarding or withholding immediate

relief, a court is entitled to and should consider the proximity of a forthcoming election and the mechanics and complexities of state election laws, and should act and rely upon general equitable principles." *Reynolds v. Sims*, 377 U.S. 533, 585 (1964). Since *Reynolds*, the Court has given great weight to the harm caused to an imminent election cycle by injunctive relief. *See*, *e.g.*, *Purcell v. Gonzalez*, 549 U.S. 1, 5 (2006) (relying partially on the "imminence of the election and the inadequate time to resolve the factual disputes" in deciding whether an injunction is warranted). The Court may not simply ignore the "harms to Defendants upon the issuance of an order enjoining them from proceeding with the upcoming elections under the present districting plan," nor may it ignore "the public's interest in having elections proceed in a timely manner with minimal voter confusion." *Harris v. McCrory*, 2014 WL 112600710, at *3 (M.D.N.C. May 22, 2014) (denying plaintiffs' motion for preliminary injunction).

On Defendants' motion for stay under Fed. R. Civ. P. 63(c), however, the question is not only whether the Court's Preliminary Injunction is harmful, but also whether that harm is irreparable here. It is.

Since Senate Bill 656 was introduced in April 2017, the North Carolina electorate has become cognizant that the 2018 judicial elections would differ from those in the past. Those differences were vetted through the legislative process. A supermajority of the General Assembly voted to eliminate partisan judicial elections in 2018. Following that decision, North Carolina voters have been educated on the policy change by the Bipartisan Board of Elections and Ethics Enforcement, which has produced guidance for voters and

made that guidance freely available on its website. (*See* Prelim. Injunction at 7 n.8, ECF No. 45.) Were the Court to decline to grant a stay, additional time and resources would be devoted to educating the electorate on the Court's method of judicial elections, though this time, any guidance the Board would produce would be more complex. Instead of explaining a change to a uniform judicial election system, the Board must now explain to laypersons who may be unfamiliar with the different judicial offices, a bifurcated system in which certain races may have primaries, while others are elected by general election only. Such a distinction qualifies as a great deal more than "minimal voter confusion." *Harris*, 2014 WL 112600710, at *3. It is precisely this confusion of the North Carolina electorate that Defendants sought to avoid by eliminating primaries for all judicial positions in the Act—confusion they now seek to avoid by requesting a stay pending appeal.

While the electorate will be irreparably harmed by the confusion caused from the Court's Preliminary Injunction, so too will the candidates for judicial offices be subject to irreparable injury by the Court's ruling. Prior to the Court's policy decision, candidates for judicial office at the trial and appellate levels had until June 18, 2018, to decide whether to declare their candidacy—no small undertaking of time, energy, and resources. Now, however, candidates for appellate positions must hastily determine whether to declare their candidacy. Doing so requires much more than simply appearing at the Board's office and signing a statutory form. Candidates for judicial office must also file campaign finance documentation, N.C. Gen. Stat. § 163A-1422, and disclosure of economic interest, N.C. Gen. Stat. § 163A-187. Candidates for appellate races also must, within ten days, raise

enough money to pay the requisite filing fee. N.C. Gen. Stat. § 163A-979.[2] Organizing a campaign, raising the requisite filing fee, and properly filing the appropriate documentation imposes more of a burden on an appellate candidate than simply filing a Notice of Candidacy. This is especially true for a candidate who was contemplating running for a judicial seat before the Court's Preliminary Injunction and believed that he or she had until June 18, 2018, to make that decision. The Court's order works a direct hardship on these potential candidates and, if a candidate cannot comply within the next 10 days, would impose an irreparable harm on that candidate.

The Court's actions also harm North Carolina's sovereign interests. As the Court recognizes, the "Constitution grants broad powers to the states to prescribe the time, place, and manner of elections for state offices." (Prelim. Injunction at 12.) This includes the right to hold a primary election. *See Tashjian v. Republican Party*, 479 U.S. 208, 217 (1986). But just because the State *may* require a primary—or a winnowing of candidates of any type—does not mean it *must* do so.

Despite the Court's recognition of this concept, (*see* Prelim. Injunction at 15), it nevertheless enjoins Defendants from dispensing with the 2018 primary for the four statewide judicial positions at issue in 2018 and mandates that North Carolina hold a primary for those positions. Under United States Supreme Court precedent, such a judicial mandate is itself an irreparable injury: "Any time a State is enjoined by a court from

---

[2] Admittedly, a candidate could also submit a petition signed by a large number of registered voters. N.C. Gen. Stat. § 163A-980. This too may be a daunting task in such a short timeframe.

effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301 (2012) (Roberts, C.J., in chambers). This is especially true for statutes governing state elections where the State "indisputably has a compelling interest in preserving the integrity of its election process." *Eu v. San Francisco County Democratic Central Comm.*, 489 U.S. 214, 231 (1989); *see also Veasey v. Perry*, 769 F.3d 890, 895–96 (5th Cir. 2014) ("When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws. If the district court judgment is ultimately reversed, the State cannot run the election over again, this time applying [the statute]."). Those compelling interests for a matter of purely state concern, such as statewide judicial office, may not even be properly reviewable by the federal courts. *See Baker v. Carr*, 369 U.S. 186, 231 (1962) ("When a State exercises power wholly within the domain of state interest, it is insulated from federal judicial review.").

For these reasons, Defendants and North Carolina voters will be irreparably harmed by the Court's Preliminary Injunction if it is not stayed while Defendants seek an expedited appeal at the Fourth Circuit. Therefore, the Court should stay its Preliminary Injunction under Fed. R. Civ. P. 62(c).

## II. Defendants are likely to succeed on the merits of their appeal.

Besides declaratory relief, Plaintiffs have sought to enjoin Defendants from enforcing Section 4(a) of the Act. Defendants are likely to establish on appeal that Plaintiffs

have not met the lofty burden necessary to enjoin enforcement of the Act, nor are they entitled to the declaratory judgment they seek.

"A preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 674 (2008). Similar to the standard required for a stay pending appeal, a litigant seeking a preliminary injunction must establish (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Counsel, Inc.*, 555 U.S. 7, 20 (2008).

Defendants anticipate raising three main issues on appeal, all of which are likely to be decided for Defendants: (1) whether Plaintiffs assert a particularized injury sufficient to establish a justiciable controversy; (2) whether Plaintiffs' right of association is even implicated by the Act's elimination of primaries for all judicial elections; and (3) whether the Act's burden on Plaintiffs' right of association is justified by a sufficient state interest.

First, Defendants are likely to succeed in their argument that Plaintiffs lack standing. To meet the dictates of the United States Constitution's "case or controversy" requirement under Article III, a plaintiff must establish as a threshold matter they "have suffered an injury in fact—an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). At best, Plaintiffs offer a conjectural injury to their right of association if the Act is enforced as written. Though they may believe in the abstract that their party's candidates may not have as strong a chance to win an

appellate election without a partisan primary, that does not necessarily mean Plaintiffs have asserted a particularized injury, much less an injury that can be redressed by the Court.

Second, Defendants are likely to convince the appellate court that eliminating judicial primaries does not even implicate Plaintiffs' right of association, much less places a burden on it. As the Court has acknowledged, Plaintiffs cite to no cases discussing whether a decision to eliminate primaries in statewide elections violates any constitutional right. (Prelim. Injunction at 14–15.) This is especially true because courts should be reticent to resolve constitutional questions "where the application of existing principles of law to new areas is uncertain and novel, particularly in the context of a preliminary injunction." *Carcano v. McCrory*, 203 F. Supp. 3d 615, 639–40 (M.D.N.C. 2016) (citations omitted).

Third, Defendants are likely to succeed on the merits of their defense that sufficient governmental interests justify any alleged burden on Plaintiffs' rights, notwithstanding the Court's conclusion that Defendants failed to justify the elimination of primaries for statewide judicial offices. Even though the Court found the redistricting of judicial districts to be a sufficient state interest supporting the absence of a primary, the Court shifted the burden of proof to Defendants to provide evidence of why appellate primaries—statewide races—were also cancelled. Essentially the Court questioned the policy choice of the General Assembly's plan to keep all judicial races together, and instead examined each race individually. Even if the separate examination for the statewide races is appropriate, there was evidence in the record that all judicial races (including appellate races) could be impacted by actions of the Legislature this year, and was also the impetus for a delayed

filing period to June 2017 and streamlined election. For instance, the record reflects that the General Assembly returned in January 2018 to examine constitutional amendments regarding the selection of judges, amendments that if passed, would appear on the May primary ballot for all North Carolina voters. (*See* Dkt. 14-4, ¶ 15, 16) (discussing constitutional amendments). The Court can, and should, take judicial notice of the fact that on January 11, 2018, the very same Joint Select Committee on Judicial Reform and Redistricting referenced in the Record, (*see* Dkts. 35-1, 37)[3] met to discuss the issues associated with judicial redistricting and *also* reviewed several proposed Section Models for alternative ways of selecting all judges in North Carolina.

*See*: https://www.ncleg.net/gascripts/DocumentSites/browseDocSite.asp?nID=376 (containing the agenda of the meeting, the plans reviewed, and the full audio of the meeting). This Committee met again on January 22, 2018, to continue discussing both alternative selection plans and redistricting. The record further contains enough evidence to establish the State's important regulatory interest and its specific interest in avoiding electoral confusion—confusion now caused by the Court-imposed bifurcated judicial election system.

So even on the scant record Plaintiffs have presented to the Court, Defendants make a strong showing of a likelihood of success on the merits. A stay is proper.

---

[3] The Committee's name referenced in the Declaration of Caroline Lim is incorrect, as it leaves out "Judicial Reform."

### III. Plaintiffs have no protected interest, so they will not be harmed by a stay.

As explained above, Plaintiffs cannot identify a particularized injury related to the Act's elimination of primaries for appellate judge positions. A balancing of the lack of harm against the irreparable harm to Defendants and North Carolina voters weighs heavily for granting a stay pending appeal here.

Even if they could be harmed, any injury could be avoided by a special primary election for the four statewide judicial positions at issue. While the Court is keenly aware that a special election is not without its own costs, (Preliminary Injunction at 24), a special primary for four judicial positions would not impose the same burdens present in *Covington v. North Carolina*, No. 1:15-cv-3999, 2018 WL 505109 (M.D.N.C. Jan. 21, 2018). There the concern was a special election to *unseat* democratically-elected representatives *after* an election had already been held. True, doing so would have a financial cost, but more importantly, it would come at the expense of undermining North Carolinian's confidence in their electoral process and, even more so, any legislative action that occurred between the original election and the special election. No such potential harm is present here and, again, the Court must "contemplate individualized judgments in each case," when determining whether equitable relief is necessary pending appeal. *Hilton*, 481 U.S. at 776.

Any determination by the Court that such a special election should be avoided because of the possibility of low voter turnout is speculative. (Prelim. Injunction at 22.) There is nothing in the record to suggest that a special primary for statewide judges and justices would not garner the attention and turnout those important positions deserve. The

opposite could as easily be true. Without partisan primaries for local judges to concentrate on, the State's political parties could focus their attention on the four judicial positions in any special primary, helping to actually *increase* voter turnout.

**IV. Public policy supports allowing the elections to proceed as the General Assembly has determined is in the best interest of North Carolinians.**

The State has a compelling interest in regulating its elections and avoiding confusion of the electorate. This interest is closely aligned with the public policy supporting voters' right to be actively involved in the electoral process. An important part of that involvement is education regarding the candidates, their positions, and the degree to which the candidates' values align with those of the voter. Public policy—the very policy determination made by the General Assembly in passing the Act—supports allowing North Carolina voters to choose their judges in general elections. Moreover, public policy supports a steady and consistent election cycle, free of last-minute changes imposed by the judicial branch. *See Reynolds*, 377 U.S. at 585; *Harris*, 2014 WL 112600710, at *3.

A stay of the Court's Preliminary Injunction would reinforce this public policy. Courts have previously come to the same conclusion, consistently staying injunctions on the eve of an election cycle. *See*, *e.g.*, *Hunt v. Cromartie*, 529 U. S. 1014 (2000); *Voinovich v. Quilter*, 503 U.S. 979 (1992); *Wetherell v. DeGrandy*, 505 U.S. 1232 (1992); *Louisiana v. Hays*, 512 U.S. 1273 (1994); *Miller v. Johnson*, 512 U.S. 1283 (1994).

Therefore, the Court should grant Defendants' Emergency Motion for Stay or Modification of Preliminary Injunction Pending Appeal (ECF No. 48).

## Conclusion

Ten days is all that stands between filing this brief and the beginning of the 2018 election cycle. Any change in the mechanics of the election—much less the drastic change ordered by this Court—will have wide-ranging effects on the election that will undoubtedly and irreparably harm both Defendants and the electorate. The converse is not true, however. Plaintiffs have little to fear from the four appellate elections were the Court to stay or dissolve its Preliminary Injunction, other than potentially the outcome of those elections. But that interest is a political one, not a constitutionally protected interest worth redress here.

Before the Court is a thin record of speculative, self-serving affidavits from Plaintiffs. The parade of horribles that Plaintiffs have presented and that the Court has echoed are insufficiently concrete to establish standing, let alone to support any possibility of success for Plaintiffs on the merits. Because of this deficiency, Defendants are likely to succeed on appeal, sufficiently supporting their entitlement to a stay pending that appeal.

For the foregoing reasons, the Court should grant Defendants' Emergency Motion for Stay or Modification of Preliminary Injunction Pending Appeal (ECF No. 48).

Respectfully submitted this 2nd day of February, 2018.

                      NELSON MULLINS RILEY &
                      SCARBOROUGH LLP

                      By: /s/ D. Martin Warf
                         Noah H. Huffstetler, III
                      N.C. State Bar No. 7170
                         D. Martin Warf
                      N.C. State Bar No. 32982
                      4140 Parklake Avenue, Suite 200
                      Raleigh, NC 27612
                      Telephone: (919) 877-3800
                      noah.huffstetler@nelsonmullins.com
                      martin.warf@nelsonmullins.com

*ATTORNEYS FOR* Defendants *PHILIP E. BERGER, in his official capacity as President Pro Tempore of the North Carolina Senate and TIMOTHY K. MOORE, in his official capacity as Speaker of the North Carolina House of Representatives*

# CERTIFICATE OF WORD COUNT

I certify that the foregoing **Defendants' Brief in Support of their Emergency Motion for Stay or Modification of Preliminary Injunction Pending Appeal** contains fewer than 6250 words (exclusive of those sections of the Brief excluded by rule), which complies with the word limitations of Local Civil Rule 7.3(d) (M.D.N.C.).

Respectfully submitted this 2nd day of February, 2018.

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: /s/ D. Martin Warf
   Noah H. Huffstetler, III
N.C. State Bar No. 7170
   D. Martin Warf
N.C. State Bar No. 32982
4140 Parklake Avenue, Suite 200
Raleigh, NC 27612
Telephone: (919) 877-3800
noah.huffstetler@nelsonmullins.com
martin.warf@nelsonmullins.com

*ATTORNEYS FOR* Defendants *PHILIP E. BERGER, in his official capacity as President Pro Tempore of the North Carolina Senate and TIMOTHY K. MOORE, in his official capacity as Speaker of the North Carolina House of Representatives*

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day electronically filed the foregoing Notice of Appeal with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel and parties of record.

This the 2nd day of February, 2018.

        NELSON MULLINS RILEY & SCARBOROUGH LLP

        By: /s/ D. Martin Warf
           Noah H. Huffstetler, III
        N.C. State Bar No. 7170
           D. Martin Warf
        N.C. State Bar No. 32982
        4140 Parklake Avenue, Suite 200
        Raleigh, NC 27612
        Telephone: (919) 877-3800
        noah.huffstetler@nelsonmullins.com
        martin.warf@nelsonmullins.com

        *ATTORNEYS FOR Defendants PHILIP E. BERGER, in his official capacity as President Pro Tempore of the North Carolina Senate and TIMOTHY K. MOORE, in his official capacity as Speaker of the North Carolina House of Representatives*