IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| NORTH CAROLINA DEMOCRATIC PARTY; et al., <br><br> Plaintiffs, <br><br> v. <br><br> PHILLIP E. BERGER, in his official capacity as PRESIDENT PRO TEMPORE OF THE NORTH CAROLINA SENATE; et al., <br><br> Defendants. | CIVIL ACTION NO. 1:17-cv-1113 |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO CERTAIN DEFENDANTS' EMERGENCY MOTION FOR STAY OR MODIFICATION OF PRELIMINARY INJUNCTION PENDING APPEAL**

There are five Defendants in this matter: the State of North Carolina, the North Carolina State Board of Elections, the Executive Director of the State Board of Elections, and certain legislative leaders. Two of them—the President Pro Tempore of the Senate Phillip E. Berger (the "President") and the Speaker of the House Timothy K. Moore (the "Speaker"), but not the other three—have moved this Court to stay that injunction pending resolution of their appeal (ECF 48).[1]

---

[1] Moments before filing this Response, Plaintiffs received a Notice by the State Defendants that they "consent" to the President and Speaker's Motion but "do not necessarily adopt the arguments in the motion." ECF 52. Notably, the State Defendants have not themselves moved to stay the Court's Order; it appears that the State Defendants only request expedited resolution of the motion.

Plaintiffs respectfully ask that the Court deny the stay requested by the Speaker and President.

**ARGUMENT**

To succeed on their request, the Speaker and President must (1) make a "strong showing" that they are likely to prevail on the merits on their appeal; (2) demonstrate that they "will be irreparably injured absent a stay"; (3) establish that the issuance of a stay will not "substantially injure the other parties"; and (4) identify how the public interest is served by the stay. *Nken v. Holder*, 556 U.S. 418, 426 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). The stay application before this Court fails every prong of this four-part test.

**I. Defendants cannot make a strong showing that their appeal is likely to succeed on the merits.**

At the outset, nothing material has changed since this Court issued its 27-page Order on January 31, 2018. Mem. Op. and Order, ECF 45. In particular, Defendants' promised changes to the boundaries of judicial districts have been neither passed nor implemented. Nonetheless, the Speaker and President claim that they have made a "strong showing" of likely success on the merits but fail to mention, much less distinguish, established precedent that defeats them on the merits.

The President and the Speaker first claim that political parties do not have standing to contest legislative alterations of the elections process because they have suffered no injury. They then allege that political parties have no constitutionally-protected interest in the identification, promotion, and election of their preferred

2

candidates. However, they do not refer to, address, or rebut the lengthy explanation of the harm that Plaintiffs have provided in their Memorandum in Support of Motion for Preliminary Injunction (ECF 15, pp. 10-14, 17-18), or Plaintiffs' Reply Memorandum in Support of their Motion for a Preliminary Injunction (hereinafter "Plaintiffs' Reply Brief") (ECF 35, pp. 6-7, 9-10).

In addition, they fail to explain away the long series of United States Supreme Court decisions demonstrating that (1) political parties such as Plaintiffs have standing, and (2) political parties like Plaintiffs have suffered injury to constitutionally-protected rights in similar controversies. *See, e.g.*, *California Democratic Party v. Jones*, 530 U.S. 567 (2000) (striking down blanket primary elections; California Democratic Party, California Republican Party, Libertarian Party of California, and the Peace and Freedom Party as plaintiffs); *Tashjian v. Republican Party*, 479 U.S. 208 (1986) (striking down Connecticut law that required primary voters be registered members of the political party; Republican Party of Connecticut as plaintiff); *Democratic Party of United States v. Wisconsin*, 450 U.S. 107 (1981) (striking down statute that required delegates to vote in accordance with the open primary results; Democratic Party of the United States as plaintiff); *Eu v. San Francisco Cty. Democratic Central Comm.*, 489 U.S. 214 (1981) (striking down California law that prohibited political party governing bodies from endorsing candidates in party primaries, local and state committees of the Democratic, Republican, and Libertarian parties as plaintiffs). Thus, the Speaker's and the President's assertions here stand squarely opposed to long-held Supreme Court precedent. Indeed, as

3

*Jones* explained: "In no area is the political association's right to exclude more important than in the process of selecting its nominee." 530 U.S. at 575.

Especially feeble is their newfound assertion that they will likely prevail because Plaintiffs' constitutional rights must be sacrificed to provide "flexibility" in the 2018 elections schedule to accommodate the mere possibility that the North Carolina General Assembly at some point soon will convince (a) 2/3 of the 120 members of the House, (b) 2/3 of the 50 members of the Senate, and (c) a majority of voters that North Carolina's constitutional command dating to 1868 that all judges other than district court judges "shall be elected by the qualified voters," N.C. Const., Art. IV, § 16, should be repealed and some other as-yet unidentified method of selection be substituted. Constitutional rights are not so ephemeral—and the legislature's capacity to escape the bounds of the Constitution is not so strong—as to allow the Speaker and President to burden Plaintiffs' constitutional rights based on sheer conjecture and speculation.

As this Court held in its January 31 order, the Speaker and President can only burden Plaintiffs' constitutional rights by proving that legitimate state interests "<u>make the burden necessary</u>." Mem. Op. and Order, ECF 45, p. 17. Just as the elimination of primaries for appellate elections in 2018 is unrelated to the redrawing of superior and district court districts, and thus not tailored to that goal, so too is the elimination of primaries for appellate elections unrelated to discussions about having judges appointed by the legislature rather than elected by the people. No such bill was before the legislature when Session Law 2017-214 was enacted in October and no such bill is in

front of the legislature even today. Surely the Speaker and President's flights of fantasy do not make the burdening of Plaintiffs' constitutional rights "necessary." As the chart attached as Exhibit A reveals, in the 47 years since 1971 more than 30 bills have been proposed to select judges by some means other than election by the people. Most of those bills have died in committee and not one of them has ever passed either the House or Senate.

Furthermore, as Plaintiffs have previously explained, the Speaker and President's preferences are no excuse for the violation of Plaintiffs' rights. *See Taylor v. Louisiana*, 419 U.S. 522, 535 (1975); *Johnson v. Halifax Cty.*, 594 F. Supp. 161, 171 (E.D.N.C. 1984). *See especially Schneider v. State*, 308 U.S. 147, 161 (1939) ("Mere legislative preferences or beliefs respecting matters of public convenience may well support regulation directed at other personal activities, but be insufficient to justify such as diminishes the exercise of rights so vital to the maintenance of democratic institutions.").

Thus, Defendants fail the first prong of the test, and a stay should be denied.

## II. The Speaker and the President cannot show any injury, much less any irreparable injury.

In their application for a stay, the Speaker and President substitute bizarre self-serving assertions for demonstrated irreparable injury. They begin by characterizing this Court's order as "more than just an existential attack on the voters' ability to engage in the legislative process." Defs' Brief, ECF 49, p. 6. In other words, the Speaker and President seem to claim that they have the power to act for all North Carolinians and that

5

they will suffer irreparable harm if the constitutional rights of Plaintiffs and voters are allowed to intervene between them and their chosen path.

Beyond this pronouncement, the Speaker and President propose two forms of injury, not to themselves, but to voters and to judicial candidates in 2018. Even a perfunctory analysis of these asserted harms reveals that these "harms" are made up and illusory. The first "harm" to voters identified by the Speaker and President is insufficient time to inform voters that their misguided plan to eliminate primaries for appellate judges has been stopped by the courts and that at the 2018 elections, just as at every election for more than a century, there will be primary elections for appellate judges. But as the Court knows, the primary election is still months away, leaving plenty of time to inform voters that appellate judicial elections will follow historical precedent and mirror every other partisan election—save District and Superior Court races —on the general election ballot.

The other "harm" identified by the Speaker and President is to persons who may be considering filing as a candidate for one of the four appellate seats up in 2018. Those persons will now have to file for election in February rather than in June. To the extent this constitutes an injury it is suffered at most by a small handful of persons. More importantly, this is surely not an irreparable injury because it can be fixed, under the leadership of the President and Speaker, by the same supermajority that created this mess in the first place: by either postponing the beginning of filing for appellate seats from February 12 or by extending the close of filing beyond February 28. Thus, perhaps the

6

Speaker and the President should take some of their own medicine. If they can justify doing away with District and Superior Court elections based on a mere aspiration to change the way that judges are elected, maybe they should also aspire to lengthen the filing period and alleviate that purported burden that is entirely within their power to fix.

**III. A stay will cause great and irreparable injury to Plaintiffs.**

In Section III of their brief, the Speaker and the President assert without additional evidence that Plaintiffs would not suffer an identifiable injury; they then digress into an aside about the viability of a special primary for appellate judicial races. Defs' Brief, ECF 49, p. 14. They pursue this argument despite the fact that this Court has already analyzed whether Plaintiffs would suffer a cognizable injury and found that "the plaintiffs have shown irreparable harm as to the appellate judicial races." Mem. Op. and Order, ECF 45, p. 25.

The First Amendment "has its fullest and most urgent application to speech uttered during a campaign for political office." *Citizens United v. FEC*, 558 U.S. 310, 339 (2010). As Plaintiffs have explained, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Centro Tepeyac v. Montgomery Cty.*, 722 F.3d 184, 191 (4th Cir. 2013). The nominee-selection "process often determines the party's positions on the most significant public policy issues of the day, and even when those positions are predetermined it is the nominee who becomes the party's ambassador to the general electorate in winning it over to the party's views." *Jones*, 530 U.S. at 575.

Plaintiffs' briefs are replete with evidence of the immediate harm that would result if Session Law 2017-214 were allowed to go forward unimpeded. As explained in Plaintiffs' Reply Brief:

> Chairman Goodwin describes how the third purpose of the NCDP (to raise funds and provide resources to help candidates persuade voters to cast ballots for them) depends upon primary elections. Goodwin Decl., ECF 14-1, ¶ 7. The NCDP and the local parties rely upon the primary election to determine party candidates and the messaging of the NCDP for the general election, to educate voters, and to enable the parties to focus scarce resources effectively. *Id.* at ¶ 10; Llewellyn Decl., ECF 14-3, ¶¶ 12-14. Retired judges Orr, Stephens, and Morey describe the broader harms by the elimination of primaries: ballot clutter, voter confusion, electoral chaos, an uninformed electorate, and the election of less qualified candidates are unfortunate consequences of the lack of a winnowing process for judicial candidates. *See, e.g.*, Orr Decl., ECF 14-5, ¶¶ 3-5, 7; Stephens Decl., ECF 14-7, ¶¶ 8-11, 12, 14-15, 20-21; and Morey Decl., ECF 14-4, ¶¶ 17-20. Defendants offer no evidence to counter this showing by Plaintiffs.

Reply Brief, ECF 35, p. 9.

In partisan elections in North Carolina, the letter "D" or "R" appearing on the ballot next to a candidate's name has for decades been understood as an indicator of a party's support for that candidate. The ballot has therefore been—and continues to be—perhaps the most important and sensitive expression of a party's association with and support for a candidate. Indeed, it is the only piece of information related to a party that is allowed inside a polling place. *See* N.C. Gen. Stat. § 163-166.4. Therefore, in the realm of what a party can do or say to support a candidate, the party affiliation on the ballot has no equal. *See Jones*, 530 U.S. at 580 ("The ability of the party leadership to endorse a candidate is simply no substitute for the party members' ability to choose their own nominee.").

8

Defendants therefore sow confusion and misrepresentation when they seek to change the meaning of those letters only for a narrow band of races—races that are already prone to confusion and a lack of information. Instead of indicating a party's support for a candidate, Defendants wish it to be merely an indication of how a candidate chooses to represent himself with a view toward winning an election. Therefore, a party's right to choose a standard-bearer for itself is transferred to someone else who gets to choose the standard bearer for the party without any party say in the process.

In creating a partisan general election without the benefit of a primary, the North Carolina General Assembly created a partisan forum on the ballot, the only political association information allowed inside the voting booth. Under normal circumstances, where party affiliations are allowed, political parties' right to determine those affiliations are honored. With Session Law 2017-214, however, the legislature has created a ballot where party affiliations must occur—but without any say on the part of the parties that are affiliating. Thus parties are forced to associate with candidates who may even be repugnant to their values. This unconstitutional forced association does undue harm to Plaintiffs and voters without any sufficient interest on the part of Defendants.

In sum, a stay would force Plaintiffs to be associated with candidates they do not support, frustrate their ability to achieve their purpose of helping nominees that they support, and remove Plaintiffs' ability to choose their party nominees. Denial of associational rights "cannot be alleviated after the election." *Council of Alternative Political Parties v. Hooks*, 121 F.3d 876, 883 (3d Cir. 1997).

## IV. A stay is not in the public interest.

On this point, the Speaker and the President wholly miss the mark. They argue primaries should be eliminated because the State has an interest in regulating elections and the public has an interest in being actively involved in elections. The public does have an interest in elections—which is precisely why the stay should be denied.

The public interest lies in holding elections, not cancelling them. "While states have a strong interest in their ability to enforce state election law requirements, the public has a strong interest in exercising the fundamental political right to vote." *Obama for Am. v. Husted*, 697 F.3d 423, 436-37 (6th Cir. 2012) (internal quotations and citations omitted). "The public interest is served by holding the [2018] elections according to a long-established system…rather than a system that poses serious constitutional concerns." *City of Greensboro v. Guilford Cty. Bd. of Elections*, 120 F. Supp. 3d 479, 490 (M.D.N.C. 2015).

In addition, Plaintiffs offered substantial evidence on the harm suffered by the public by the elimination of primaries in support of their motion. The absence of a primary "diminishes" the "informed choice" of voters. Decl. of Donald W. Stephens, ECF 14-7, ¶ 12. As Judge Stephens further explained:

> Based upon my own experiences in five judicial elections spanning 32 years, the absence of primaries in 2018 judicial elections will, in my opinion, significantly deprive voters of their best opportunity to learn about the essential qualifications of each candidate for those seats and will deprive each candidate of an important means for advancing their candidacy. The public will be delayed in learning about who has filed for judicial office until after the primary election is over and will have far less

10

> time to evaluate those judicial candidates who file before the general election.
>
> More importantly, the absence of judicial primaries will pose a risk that the best qualified candidates will not be elected by a well-informed citizenry and that winning candidates will take office in an election in which they did not receive a majority vote to hold such high public office. Such a result will undermine democratic principles and greatly weaken the quality and integrity of the judicial branch of government.

Decl. of Donald W. Stephens, ECF 14-7, ¶¶ 20-21. Primaries serve to educate the public, which only improves the quality of the judiciary. There is no harm—and in fact the public is benefitted—by reinstating primaries for the four partisan appellate elections this year. In contrast, Defendants' plan to eliminate primaries and instead force parties to resort to a system of support-by-endorsement altogether removes voters' power in primary elections.

## **CONCLUSION**

In its January 31, 2018 Order, this Court properly granted a preliminary injunction that prevents Defendants from eliminating primaries in partisan elections for appellate judicial candidates. The Speaker's and the President's efforts to stay that preliminary injunction meet none of the requirements of the applicable test. They fail to make a "strong showing" that their appeal is likely to prevail on the merits, they cannot demonstrate that they will be irreparably injured absent a stay, the issuance of a stay will irreparably harm both Plaintiffs and voters, and consequently, granting a stay would only harm the public interest. For these reasons, Plaintiffs respectfully request that this Court

11

deny the Speaker's and the President's Emergency Motion for Stay or Modification of Preliminary Injunction Pending Appeal.

This the 6th day of February, 2018.

**WALLACE & NORDAN LLP**

By: /s/ John R. Wallace
John R. Wallace
N.C. State Bar No. 7374
jrwallace@wallacenordan.com
Matthew M. Calabria
N.C. State Bar No. 39562
mcalabria@wallacenordan.com
Post Office Box 12065
Raleigh, NC 27605
Telephone: 919-782-9322
Facsimile: 919-782-8133

*Counsel for Plaintiffs*

**POYNER SPRUILL LLP**

By: /s/ Edwin M. Speas, Jr.
Edwin M. Speas, Jr.
N.C. State Bar No. 4112
espeas@poynerspruill.com
Caroline P. Mackie
N.C. State Bar No. 41512
cmackie@poynerspruill.com
P.O. Box 1801 (27602-1801)
301 Fayetteville St., Suite 1900
Raleigh, NC 27601
Telephone: 919-783-6400
Facsimile: 919-783-1075

*Counsel for Plaintiff N.C. Democratic Party*

## CERTIFICATE OF COMPLIANCE WITH WORD COUNT

The undersigned hereby certifies that the foregoing brief, exclusive of the case caption and certificate of service, contains less than nine thousand (9,000) words.

This the 6th day of February, 2018.

        **POYNER SPRUILL LLP**

By: /s/ Edwin M. Speas, Jr.
    Edwin M. Speas, Jr.
    N.C. State Bar No. 4112
    espeas@poynerspruill.com
    Caroline P. Mackie
    N.C. State Bar No. 41512
    cmackie@poynerspruill.com
    P.O. Box 1801 (27602-1801)
    301 Fayetteville St., Suite 1900
    Raleigh, NC  27601
    Telephone: 919-783-6400
    Facsimile:  919-783-1075

    *Counsel for Plaintiff N.C. Democratic Party*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel and parties of record.

This the 6th day of February, 2018.

/s/ Edwin M. Speas, Jr.
Edwin M. Speas, Jr.