IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| NORTH CAROLINA DEMOCRATIC PARTY, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:17-CV-1113 |
| PHILIP E. BERGER, et al., | ) ) ) | |
| Defendants. | ) | |

## ORDER

On January 31, 2018, this Court entered a preliminary injunction prohibiting defendant Kim Strach, Executive Director of the State Board of Elections, from enforcing § 4(a) of S.L. 214. Legislative defendants Phillip E. Berger, the President Pro Tempore of the Senate, and Timothy K. Moore, the Speaker of the House, filed notice of appeal on February 2, along with an emergency motion to stay. The state defendants—the State of North Carolina, the State Board of Elections, and Executive Director Strach—thereafter filed their own notice of appeal. The state defendants consent to the legislative defendants' motion for a stay but "do not necessarily adopt the arguments in the motion." Doc. 52. The plaintiffs object to the stay. Because the legislative defendants have not established a strong likelihood of success on appeal and other equitable factors also do not support a stay, the motion will be denied.

In evaluating motions for a stay, courts traditionally consider (1) whether the defendants have made a strong showing that they are likely to succeed on the merits; (2) whether the defendants will be irreparably injured absent a stay; (3) whether issuance of

the stay will substantially injure the other parties in the proceeding; and (4) where the public interest lies. *See, e.g., Nken v. Holder*, 556 U.S. 418, 434 (2009); *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987). "A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken,* 556 U.S. at 433 (quoting *Virginian Ry. Co. v. U.S.,* 272 U.S. 658, 672 (1926). Rather, it is an exercise of judicial discretion, and the party requesting a stay bears the burden of showing that the circumstances of the particular case justify an exercise of that discretion. *Nken*, 556 U.S. at 433–34.

## 1. Have the legislative defendants made a strong showing that they are likely to succeed on the merits?

The legislative defendants assert they are likely to prevail on appeal on their arguments that there is no justiciable controversy, that S.L. 214 does not implicate the plaintiffs' right of association, and that a sufficient state interest justifies the burden on any such right. As the Court's order ruling on the plaintiffs' motion for a preliminary injunction made clear, there are many cases in which political parties have successfully brought cases concerning election issues and ballot issues. *See, e.g., Williams v. Rhodes*, 393 U.S. 23 (1968); Doc. 45 at 9-10. On a number of occasions the Supreme Court has recognized the strong interest political parties have in primaries, *see, e.g., California Democratic Party v. Jone*s, 530 U.S. 567 (2000), and it has held at least twice that restrictions on primaries and on how candidates appear on the ballot burden political parties' First Amendment associational rights. *See, e.g., Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 452 (2008) (noting that the litigants' disagreement was only as to severity of the burden of a law abolishing partisan primaries, not the

2

existence of the burden); *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 363 (1997) (identifying burden prohibiting "fusion" designation on ballot as "not trivial").[1]

Finally, the legislative record is silent as to any governmental interest in abolishing primaries for statewide judicial races in 2018. This is unlike the record concerning races for trial judgeships. *See* Doc. 45 at 20.

In the briefing on the motion to stay, the legislative defendants assert, for the first time, that there may be a statewide constitutional amendment on the ballot in May 2018 concerning judicial selection that could affect all judicial races and that this gives rise to a state interest justifying the burden on plaintiffs' associational rights. Doc. 49 at 12-13 (citing Doc. 14-4 at ¶¶ 15-16). The legislative defendants have not, however, directed the Court's attention to any evidence indicating that any such constitutional amendment would affect elections in 2018. Additionally, as the plaintiffs point out, in the last forty-plus years more than thirty bills have proposed selecting judges by some means other than election by the people. *See generally* Doc. 53-1. Of these, most died in committee,

---

[1] In *Washington State Grange,* where the Supreme Court upheld a challenge to a state system abolishing partisan primaries, the state system still had a "top two" primary that allowed voters and political parties to work towards narrowing the field for the general election. 552 U.S. at 444. Thus political parties in Washington had a shot, before the general election, at eliminating candidates bearing their party affiliation but who were not the party's preferred candidate or, more seriously, did not actually share the party's view. *Cf. Jones*, 530 U.S. at 577 (discussing harm when party nominee doesn't share party views). That is entirely different from the situation here, where § 4(a) has eliminated the primary—partisan or nonpartisan—entirely. In view of the history of multi-candidate elections under different circumstances, *see* Doc. 45 at 3-4, it is highly likely that the plaintiffs at the partisan general election stage will have a ballot affiliation with candidates they have had no opportunity to attempt to defeat.

none has passed both the House and Senate, *see id.,* and none made it onto the ballot for the voters' approval or rejection, making this asserted state interest entirely speculative.

The legislative defendants also assert, again for the first time and somewhat indirectly, that appellate judgeships were included so that there would be "a uniform judicial election system" which would reduce voter confusion. Doc. 49 at 8. They have cited no evidence in the legislative record or otherwise for this claimed motivation, nor is there any evidence to support the related and necessary component assertion that eliminating primaries reduces voter confusion. Indeed, as set forth in the Court's earlier opinion, the record evidence indicates the absence of a mechanism to reduce the number of candidates on the general election ballot is likely to cause significant confusion in appellate races, as it has in the past. Doc. 45 at 18, 26. This unsupported, half-hearted, and belated attempt to identify a legitimate state interest in abolishing primaries for appellate judgeships is inadequate to establish that the state's purported interest justifies the burden on plaintiffs' First Amendment rights.

The legislative defendants contend that there is no case holding that political parties have associational rights that are burdened under the same facts as exist in this case. While that is true, there is also no case holding that political parties do not have associational rights in this situation, or that such rights are not burdened. That there is no case exactly on point does not mean the legislative defendants are likely to win, just as it does not mean the plaintiffs are likely to win. As discussed *supra* and in the Court's decision granting the preliminary injunction, the Supreme Court cases in this area of law more strongly support the plaintiffs' position that total abolishment of a primary with a

4

partisan general election burdens its associational rights. The power to regulate the time, place, and manner of elections does not justify, without more, the abridgment of fundamental rights such as the freedom of political association. *See, e.g., Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 217 (1986).

Nor does the legislative defendants' persistent repetition of its view that the Court has made a "policy choice" support its contention that it will prevail on the merits. This claim is an inaccurate representation of the record and the Court's decision, which is affirmatively grounded in whether § 4(a) of S.L. 214 likely violates the plaintiffs' First Amendment rights, not whether the State has made a good or bad policy choice in abolishing primaries. *See* Doc. 45 at 20 (denying plaintiffs' motion for preliminary injunction as to local judgeships).

The legislative defendants have not made a strong showing that they are likely to prevail on appeal.

**2. Will the legislative defendants be irreparably injured absent a stay?**

The legislative defendants have made no argument that the injunction will harm them personally or in their official capacities. Instead, they contend that North Carolina voters and candidates are harmed.[2]

First, the legislative defendants assert that entering a preliminary injunction "on the eve of the 2018 election cycle" harms voters, who will "not have enough time to

---

[2] While the ability of the legislative defendants to speak for the state is not entirely clear, especially when the state does not join in the arguments made by the legislative defendants, the Court will consider these arguments on their merits.

evaluate how the [injunction] affects the election of their appellate judges." Doc. 49 at 6. This is a confusing statement, since the Court's ruling simply results in reversion to the long-established process of a primary followed by a general election for appellate judges, the same process that applies to other, non-judicial elections. In any event, there is little need for voters to "evaluate" how the injunction affects the election in order to vote in particular races. Moreover, the primary is scheduled for May with the general election in November, leaving months for voters to educate themselves about judicial elections.

The legislative defendants next claim that the injunction will disrupt the "imminent election cycle." As just noted, however, neither the primary nor the general elections are at all imminent; under the existing schedule, the primary is three months away and the general election is eight months away. The legislative defendants have presented no evidence that the State Board cannot manage a primary election for a few appellate judicial races on the schedule already in place for other elections or that any particular practical or logistical difficulties arise as a result of the injunction. And the state defendants have not moved for a stay. The legislative defendants seem to have no difficulty with the idea of a special primary, should the plaintiffs prevail on the merits, Doc. 49 at 14, and they have not explained why the injunction against § 4(a) is more disruptive than a special primary election. A theoretical possibility of irreparable injury is not enough to justify a stay. *See Nken*, 556 U.S. at 434.

The legislative defendants also contend that candidates are harmed because the preliminary injunction will disrupt the scheduled filing period. While the Court does not doubt that this is true to some extent, this would affect only a relatively small number of

6

people and the legislative defendants have presented no evidence to support their contentions about the degree of disruption.[3] There is no reason to think that serious candidates for statewide judicial campaigns would not have begun organizational work before the state abolished primaries for 2018 judicial elections in October 2017, just a few months before the expected filing period was set to open. They have identified no particular way in which candidates will be unable to file for statewide judicial office as a result of the injunction.[4] Moreover, the state's own actions undermine this claimed disruption, as the undisputed evidence shows the legislature is seriously contemplating requiring candidates for trial judgeships to file in June for judicial districts that have not been drawn yet.[5] Finally, the legislature has the authority to extend or delay the filing

---

[3] It is well-established that statements in a brief are not evidence. *See, e.g., INS v. Phinpathya*, 464 U.S. 183, 188 n. 6 (1984) (declining to consider "[c]ounsel's unsupported assertions in respondent's brief" as evidence); *Kulhawik v. Holder*, 571 F.3d 296, 298 (2d Cir. 2009) ("An attorney's unsworn statements in a brief are not evidence."); *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1358 (4th Cir. 1995) (holding jury was properly instructed that counsel's statements are not evidence); *Estrella v. Brandt*, 682 F.2d 814, 819 (9th Cir. 1982) (holding legal memoranda and oral argument are not evidence); *Skyline Corp. v. NLRB*, 613 F.2d 1328, 1337 (5th Cir. 1980) ("Statements by counsel in briefs are not evidence.").

[4] In their brief, the legislative defendants mention the steps that a candidate must take in addition to "signing a statutory form" in order to file for office. *See* Doc. 49 at 8-9. However, counsel have not provided any specifics as to deadlines for these requirements or otherwise suggested that filing is impossible. Moreover, the law requires all the candidates to be licensed attorneys, N.C. Const. art. IV, § 22, who presumably have the ability to read and understand the relevant requirements.

[5] These potential candidates are looking at a filing period only four months away without having any idea what sort of redistricting the legislature might impose, whether they will live in a district with an open seat, and, as to incumbents, whether they may be double-bunked with one or more colleagues. Even if a redistricting statute were adopted this month, that is a short time frame for potential candidates to consider the degree of support they will have in the new districts, to investigate the partisan make-up and voting history of the new district and to assess how that might play out in the newly-partisan judicial races, and to evaluate the feasibility of a campaign in the new district.

7

period and the primary, *see Tashjian,* 479 U.S. at 217 (recognizing the state's authority to control the time of elections, subject to constitutional limits), if the legislature finds it appropriate to give candidates more time to get organized to file for these races.

The legislative defendants are correct that the state suffers a form of irreparable harm if its election laws are enjoined, a primary and general election are held, and ultimately the court's preliminary injunction ruling is overturned on appeal or the plaintiffs are unsuccessful at trial. *See, e.g., Maryland v. King*, 567 U.S. 1301, *3 (2012) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox. Co.* 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)). By itself, of course, this is insufficient to support a stay. *Virginian Ry. Co.*, 272 U.S. at 672; *accord, Nken*, 556 U.S. at 438-39 (Kennedy, J., concurring and collecting authorities). And here there is no reason to expect the appellate court will not seriously and promptly consider the defendants' appeals, *see* 28 U.S.C. § 1292(a)(1) (providing that courts of appeals have jurisdiction to hear interlocutory appeals from orders granting injunctions), and that the case will not move promptly towards an expedited trial. *See* Notice of Pretrial Conference, Doc. 46.[6]

The legislative defendants also contend that having primaries for only some judicial elections but not others will result in voter confusion. But the Supreme Court has noted that "[o]ur cases reflect a great[] faith in the ability of individual voters to inform themselves about campaign issues," *Wash. State. Grange*, 552 U.S. at 454, and has been

---

[6] As already noted, the legislature can, subject to constitutional limits, delay the primary until after the trial, a solution that would obviate any harm should the preliminary injunction have been issued in error or should a different result follow trial.

8

disinclined to credit unsupported speculative claims of voter confusion. *Id.* at 454-56. Moreover, the state's own conduct otherwise demonstrates confidence in the ability of voters to quickly adapt to significant changes in judicial elections. The evidence in this case establishes that the legislature's ongoing contemplation of widespread changes to judicial districts for scores of local judgeships that will be on the ballot this year has created a landscape of uncertainty for local judicial elections. The legislature surely would not continue to consider such significant changes for the 2018 election if it did not believe voters would rapidly adapt to whatever changes the legislature imposes on top of the change back to partisan elections and the abolishment of the primary. Finally, it is common for some races and not others to appear on the primary ballot, as races with only two candidates do not require a primary. *See* N.C. Gen. Stat. § 163A-983. Holding primaries for certain judicial races but not others does not seem likely to engender much, if any, additional confusion.

### 3. Will the issuance of the stay substantially injure the other parties?

If the stay is issued, the plaintiffs are immediately harmed. The provision at issue is one that applies only to the 2018 elections, making the need for an immediate decision clear. As the plaintiffs have pointed out, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Elrod v. Burns*, 427 U.S. 347, 373 (1976), and denying "voting and associational rights" "cannot be alleviated after the election." *Council of Alternative Political Parties v. Hooks*, 121 F.3d 876, 883 (3d Cir. 1997); *see also Jones,* 530 U.S. at 574 (noting that the First Amendment protects "the freedom to join together in furtherance of common political

9

beliefs."); *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 339 (2010) (noting that the First Amendment "has its fullest and most urgent application to speech uttered during a campaign for public office."). The Court fully discussed the harm to the plaintiffs in its order granting the preliminary injunction. Doc. 45 at 17-19, 23-24.

The legislative defendants contend that a special primary election could avoid any harm to the plaintiffs, should the plaintiffs prevail on the merits. Doc. 49 at 14. This argument might have more force were the legislature to pass a provision authorizing such a special primary on a date certain if required and a proposed schedule for expedited discovery and trial accompanied the argument. As it is, a stay would immediately dissolve the legislative defendants' interest in a prompt and final resolution of the dispute within a time frame that would allow for a special primary. And if the plaintiffs are successful at trial, it is entirely likely that the legislative defendants would appeal and again ask for a stay of any order requiring a special primary. Its arguments here about the difficulties of making changes "on the eve of the election cycle"—which are inconsistent with its claim that a special election is feasible—foreshadow such an approach, even though the legislative defendants at the moment say a special primary is possible.

### 4. Where does the public interest lie?

The Court agrees with the legislative defendants that the state has a strong interest in regulating elections and avoiding confusion of the electorate. However, the state's interest in regulating its elections does not mean it can violate the First Amendment rights of political parties. *See, e.g., Tashjian*, 479 U.S. at 217. And there is a weighty public interest against enforcing laws likely to be unconstitutional. *See Giovani Carandola, Ltd.*

10

*v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002) ("[A] state is in no way harmed by issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found unconstitutional. If anything, the system is improved by such an injunction."). Likewise, there is a strong interest in holding elections, not cancelling them. *Obama for Am. v. Husted*, 697 F.3d 423, 436-37 (6th Cir. 2012) ("While states have a strong interest in their ability to enforce state election law requirements, the public has a strong interest in exercising the fundamental political right to vote.")

Moreover, it is difficult to credit the legislative defendants' contention that a preliminary injunction issued in January for a few statewide races in a primary over three months away will confuse voters when the injunction does nothing more than return the state to historical practices with which voters are familiar. This is especially so since the legislative defendants have offered no evidence in support of their contention and their contention is inconsistent with the legislature's own actions. As discussed earlier, the legislature must have confidence in the ability of voters to adapt to significant changes in judicial elections quickly because of its willingness to consider redistricting scores of local judicial elections just a few months before the filing period opens.

The legislative defendants contend that the injunction interferes with the public policy in favor of "allowing North Carolina voters to choose their judges in general elections." Doc. 49 at 15. The Court is mystified by this argument, as the preliminary injunction does not deprive any voter of the right to vote in the general election.

Finally, the legislative defendants contend that public policy favors "a steady and consistent election cycle, free of last-minute changes imposed by the judicial branch."

11

Doc. 49 at 15. The preliminary injunction supports the public interest in avoiding last-minute changes, as it was issued more than three months before the regularly scheduled primary and does not require a special election.[7]

### 5. Summary

The legislative defendants have not made a strong showing that they are likely to succeed on the merits. Nothing material has changed since this Court issued the January 31, 2018, preliminary injunction. The Court already has concluded, in its previous order and for the reasons explained above, that the plaintiffs have standing, that their First Amendment rights are burdened, and that they are likely to succeed on the merits. The legislative defendants have made no serious attempt to distinguish the cases referenced in the Court's previous order.

The Court agrees with the legislative defendants that the state will suffer a form of irreparable harm if a primary and general election are held and the Court's ruling is overturned or the plaintiffs are unsuccessful at trial. But this alone is insufficient to warrant a stay. Additionally, the Court intends to move this case promptly to final resolution, well before the general election. The legislative defendants have not

---

[7] The cases cited by the legislative defendants are overwhelmingly redistricting cases, where the Supreme Court stayed trial court decisions involving redistricting shortly before elections. *See, e.g., Voinovich v. Quilter*, 507 U.S. 146 (1993) (three-judge panel struck down Ohio's reapportionment plan, appointed a special master, and vacated the date for holding primary election for general assembly candidates; Supreme Court granted a stay); *Miller v. Johnson*, 515 U.S. 900 (1995) (three-judge panel struck down Georgia's 11th congressional district on racial gerrymandering grounds; the Supreme Court stayed the case two-months before the 1994 general election). The opposite situation is present here, where the legislature has delayed and changed an imminent election cycle in contemplation of significant redistricting changes.

otherwise provided any evidence to support their claims that the injunction will disrupt the election cycle or the candidate filing period, or that it will cause voter confusion.

The plaintiffs' evidence shows, as the Court has already found, that abolishing the appellate judicial primaries would irreparably harm the plaintiffs. Doc. 45 at 24-25. The denial of voting and associational rights "cannot be alleviated after the election." *Hooks*, 121 F.3d at 883. The legislative defendants offer no evidence to undermine the Court's earlier finding, and their position—that the "plaintiffs have no protected interest, so they will not be harmed by a stay," Doc. 49 at 14—simply reiterates their earlier, and unsuccessful, argument against granting the preliminary injunction.

Finally, the public interest also weighs against granting a stay. There is a weighty public interest against enforcing laws a court finds are likely to be unconstitutional, especially in the election context where voters have a strong interest in participation in elections. Further, the legislative defendants' contention concerning voter confusion is speculation at best and is inconsistent with the legislature's own conduct in changing filing periods and abolishing the primary just a few months before the scheduled filing period and in continuing to give serious consideration to making scores of changes to local judicial districts before the 2018 election.

Taking all of these factors into account, the Court declines to exercise its discretion to stay the preliminary injunction pending appeal and will deny the motion.

### 6. Other Matters

The legislative defendants in the alternative ask the Court to dissolve the injunction pending appeal. They appear to rely on the same reasons presented to support

the motion for a stay. The motion to dissolve the injunction will be denied, for the reasons stated in this order and in the Court's first order.

According to the caption of the motion, the legislative defendants also seek to modify the preliminary injunction. However, nothing in the motion or the brief identifies any particular provision or part of the injunction that the legislative defendants want changed, and in the text of the motion, the legislative defendants ask that the injunction be dissolved. *See* Doc. 48 at 2 (asking the court, "alternatively, to dissolve the Preliminary Injunction pending appeal."). To the extent the legislative defendants seek to modify the injunction, the motion is denied.

## CONCLUSION

For the reasons stated in this order and in light of the findings in the Court's order entering the preliminary injunction, the Court concludes that the legislative defendants have not met their burden to show circumstances justifying a stay. The Court declines to exercise its discretion to stay the preliminary injunction pending appeal and will deny the motion.

It is **ORDERED** that the legislative defendants' emergency motion for stay or modification of preliminary injunction pending appeal, Doc. 48, is **DENIED**.

This the 7th day of February, 2018.

UNITED STATES DISTRICT JUDGE