IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:17-CV-1113

| | |
|---|---|
| North Carolina Democratic Party; Cumberland County Democratic Party; Durham County Democratic Party; Forsyth County Democratic Party; Guilford County Democratic Party; Mecklenburg County Democratic Party; Orange County Democratic Party; and Wake County Democratic Party,<br><br>    Plaintiffs,<br><br>  v.<br><br><br>Phillip E. Berger, in his official capacity as President Pro Tempore of the North Carolina Senate; Timothy K. Moore, in his official capacity as Speaker of the North Carolina House of Representatives; the State of North Carolina; the North Carolina Bipartisan State Board of Elections and Ethics Enforcement; and Kimberly Strach, in her official capacity as Executive Director of the North Carolina Bipartisan State Board of Elections and Ethics Enforcement,<br><br>    Defendants. | **Defendants' Joint Brief in Support of their Joint Motion to Dismiss**<br><br>(Fed. R. Civ. P. 12(b)) |

Defendants respectfully submit this brief in support of their Joint Motion

to Dismiss Plaintiffs' Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the

Federal Rules of Civil Procedure. Because Plaintiffs lack standing and, therefore, the Court lacks subject matter jurisdiction, and because Plaintiffs fail to state a claim for which relief may be granted, the Court should dismiss the Complaint.

## NATURE OF THE MATTER

Plaintiffs, consisting of eight (8) state and county Democratic Party organizations, brought this action against Defendants for declaratory judgment and injunctive relief. Plaintiffs assert that the lack of a primary election for judicial offices this year violates the organizations' "associational rights protected by the First and Fourteenth Amendments of the U.S. Constitution." (ECF No. 2, Complaint at ¶ 2). Because North Carolina's choice to forgo a primary for judicial offices in 2018 does not burden an associational right of a political party, Defendants seek dismissal of the Complaint.

## STATEMENT OF FACTS

On October 17, 2017, the General Assembly enacted Senate Bill 2017-656, which was ratified as North Carolina Session Law 2017-214 ("S.L. 214"). S.L. 214 became effective January 1, 2018. *See* 2017 N.C. Sess. Laws 214, § 5. It increased ballot access in North Carolina by reducing the number of signatures required for political organizations to become recognized political

parties in North Carolina. *Id*. § 1. It also allowed unaffiliated candidates to be listed on the ballot, including ballots for certain municipal elections. *Id*. § 2(a).

Additionally, S.L. 214 eliminated party primaries for candidates seeking election to the district courts, the superior courts, and the appellate courts. *Id*. § 4(a). The judicial candidate with the highest number of votes wins the respective election. *Id* § 4(k). The filing period for these judicial offices runs from June 18, 2018, to June 29, 2018. *Id*. § 4(b). The candidacy filing period for other 2018 races that have primaries is from February 12, 2018, to February 28, 2018. N.C. Gen. Stat. § 163A-974. The primaries for 2018 are scheduled for May 8, 2018. N.C. Gen. Stat. § 163A-700.

On December 12, 2017, Plaintiffs filed a complaint challenging Section 4(a) of S.L. 214, naming as defendants Senate President Pro Tempore Philip E. Berger,[1] House of Representatives Speaker Timothy K. Moore (collectively, the "Legislative Defendants"), the State of North Carolina (the "State"), the North Carolina Bipartisan State Board of Elections and Ethics Enforcement (the "State Board"), and the Executive Director of the State Board, Kimberly Strach (the "Director") (collectively, "Defendants"). (Compl., ECF No. 2.) Plaintiffs alleged that Section 4(a) violates their First

---

[1] In their Complaint, Plaintiffs misspelled President Pro Tempore Berger's first name ("Phil**l**ip" instead of "Philip"). Defendants request that the Court reform the caption to correct the misspelling.

and Fourteenth Amendment rights of political association. (*Id.* ¶ 2.) Plaintiffs also filed a Motion for Preliminary Injunction, (ECF No. 14), and a Memorandum in Support, (ECF No. 15). Plaintiffs attached seven declarations to their Memorandum. (ECF Nos. 14-1 through 14-7.)[2] Plaintiffs did not move for a temporary restraining order. A hearing was held on January 24, 2018. On January 31, 2018, the Court entered an order enjoining S.L. 214 as it applies to appellate judicial races. (ECF No. 45.) Defendants appealed to the United States Court of Appeals for the Fourth Circuit and sought a stay of the order, which was granted on February 9, 2018. (Order, ECF No. 32, NC. Democratic Party, et al. v. Berger, et al., No. 18-1150, Feb. 9, 2018.) The parties thereafter sought expedited review in the Fourth Circuit, (*Id.* ECF No. 29), which was granted on February 16, 2018, (*Id.* ECF No. 41–42). An expedited briefing schedule has been ordered and oral arguments are set for March 20, 2018. (*Id.*)

---

[2] Defendants renew their objection to the declarations under Fed. R. Evid. 602 (lack of personal knowledge), 701 (improper lay witness testimony), and 702 (improper expert testimony). *See also Chrysler Corp. v. Brown*, 441 U.S. 281, 311 (1979) ("The remarks of a single legislator, even the sponsor, are not controlling in analyzing legislative history."); *accord Roy v. Cty. of Lexington, S.C.*, 141 F.3d 533, 539 (4th Cir. 1998); *see also Styers v. Phillips*, 178 S.E.2d 583, 590 (1971) ("The Supreme Court of North Carolina has stated that 'the intention of the legislature cannot be shown by the testimony of a member.'").

## QUESTIONS PRESENTED

Plaintiffs have challenged S.L. 214 under the First Amendment to the United States Constitution, which protects a political party's right to association. Thus, the questions presented are:

I.   Whether Plaintiffs' claims against the State and the State Board must be dismissed under the Eleventh Amendment?

II.  Whether Plaintiffs' claims should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction because S.L. 214 does not burden their associational rights, Plaintiffs have suffered no injury in fact, and Plaintiffs lack standing?

III. Whether Plaintiffs' claims should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted because they have no constitutional right to a primary and their associational rights are not burdened by S.L. 214?

## ARGUMENT AND AUTHORITIES

The Complaint is barred as to the State and the State Board by the Eleventh Amendment. Additionally, Plaintiffs lack standing and otherwise fail to state a claim upon which relief can be granted. Neither this Court, the United States Court of Appeals for the Fourth Circuit, nor the Supreme Court

of the United States has recognized that the absence of a primary burdens the associational rights of a political party.

# I. Standard of Review

## A. Rule 12(b)(1) Motions Challenging Standing

"Article III gives federal courts jurisdiction only over cases and controversies," and standing is "an integral component of the case or controversy requirement." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006) (internal quotation marks omitted). A plaintiff can have standing only if it "personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979). The plaintiff bears the burden of establishing the requisite elements of standing and must support each element of standing with sufficient factual allegations. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In the absence of the requisite standing, the lawsuit must be dismissed under Rule 12(b)(1) because the Court lacks subject matter jurisdiction. *See Allen v. Wright*, 468 U.S. 737, 750-66 (1984); *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005).

Under Rule 12(b)(1), the Court "weighs the evidence to determine its jurisdiction." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Plaintiff bears the burden of showing that jurisdiction is appropriate. *Evans v. B.F.*

Case 1:17-cv-01113-CCE-JEP   Document 67   Filed 02/20/18   Page 6 of 28

*Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). On a jurisdictional challenge under Fed. R. Civ. P. 12(b)(1), the district court may consider evidence outside of the pleadings without converting the proceeding to one for summary judgment. *Evans*, 166 F.3d at 647; *see also Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004) ("Generally, when a defendant challenges subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.").

## B. Rule 12(b)(6) Motions

In considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, all well-pled allegations are presumed to be true and must be viewed in the light most favorable to the plaintiff. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). A plaintiff must plead facts sufficient to raise a right to relief above the speculative level. *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). The plaintiff is required to "articulate facts, when accepted as true, that 'show' that the plaintiff has stated

7

a claim entitling him to relief, i.e., the 'plausibility of entitlement to relief.'"

*Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). In weighing the legal

sufficiency of the complaint, courts do not consider "legal conclusions, elements

of a cause of action, . . . bare assertions devoid of factual enhancement[,] . . .

unwarranted inferences, unreasonable conclusions, or arguments." *Nemet*

*Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009)

(citations omitted).

## II. Plaintiffs' claims against the State and the State Board are barred by the Eleventh Amendment.

Although the Complaint should be dismissed for the reasons set forth

below, Plaintiffs' claims against the State and the State Board are additionally

barred by Eleventh Amendment immunity.

> The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State." The Supreme Court has held that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State," *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), and the Eleventh Amendment protects "state agents and state instrumentalities" as well as the States themselves, *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997).

8

*Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 479 (4th Cir. 2005).

"It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. . . . This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. at 100. Pursuant to this line of cases, the State and the State Board (an agency of the State)[3] are entitled to Eleventh Amendment immunity and should be dismissed from this action.[4]

## III.  Plaintiffs lack standing.

The United States Court of Appeals for the Fourth Circuit has stated that "[s]tanding is a threshold jurisdictional question which ensures that a suit is a case or controversy appropriate for the exercise of the courts' judicial powers under the Constitution of the United States." *Pye v. United States*, 269 F.3d 459, 466 (4th Cir. 2001) (citing *Steel Co. v. Citizens for a Better*

---

[3] Defendants do not move for dismissal of this action under the Eleventh Amendment as to the other named Defendants but rather acknowledge that "a suit against individuals for the purpose of preventing them as officers of a State from enforcing an unconstitutional enactment to the injury of the rights of the plaintiff, is not a suit against the State within the meaning of [the Eleventh] Amendment." *Ex parte Young*, 209 U.S. 123, 154 (1908).

[4] Plaintiffs acknowledge as much. (*See* ECF No. 35 at p. 5 ("The Eleventh Amendment immunity of the State itself and its election agency . . . .")

*Environment*, 523 U.S. 83, 102 (1998)).  The burden of establishing compliance

with standing requirements rests upon the party asserting the claim.  *Friends*

*for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 320 (4th Cir. 2002).

> An organization claiming standing in its own right must
> adequately allege that "(1) it has suffered an 'injury in fact' that is
> (a) concrete and particularized and (b) actual or imminent, not
> conjectural or hypothetical; (2) the injury is fairly traceable to the
> challenged action of the defendant; and (3) it is likely, as opposed
> to merely speculative, that the injury will be redressed by a
> favorable decision."

*S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands,*

*LLC*, 713 F.3d 175, 182 (4th Cir. 2013) (quoting *Friends of the Earth, Inc. v.*

*Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)).  Plaintiffs

have not adequately alleged that they will suffer an injury in fact and,

therefore, have not pled facts sufficient to support standing.

Plaintiffs' core allegation is that "S.L. 214 eliminates the fundamental

right of Plaintiffs to choose their judicial nominees in a partisan primary."

(Compl. ¶ 28, ECF No. 2.)  However, as this Court has recognized, it is clear

"that a primary election is not the only way a state can constitutionally reduce

the number of candidates for the general election and, thus, that political

parties cannot demand that states choose the winnowing-down method that

the political parties prefer."  (Mem. Opinion and Order, at 16, ECF No. 45.)

While S.L. 214 cancels primaries for judicial races in 2018, it does not eliminate

10

the right of Plaintiffs (or any other political parties) to choose their judicial nominees.[5]

While they assert various purposes of their organizations, Plaintiffs fail to show how any of these purposes has been impaired by a lack of a primary election as a consequence. Specifically, Plaintiffs assert in the Complaint that the purposes of the North Carolina Democratic Party are to:

> (i) bring people together to develop public policies and positions favorable to [the North Carolina Democratic Party] members and the public generally, (ii) identify candidates who will support and defend those policies and positions, and (iii) persuade voters to cast their ballots for those candidates.

(Compl. ¶ 4, ECF No. 2.) The purposes of the county-specific Plaintiff organizations are to:

> (i) bring people together to develop public policies and positions favorable to their members and the public generally in their respective counties, (ii) identify candidates who will support and defend those policies and positions in their respective counties, (iii) persuade voters to cast their ballots for those candidates in their respective counties, and (iv) provide grassroots energy and organization for Democrats in their respective counties.

---

[5] The North Carolina Democratic Party Plan of Organization provides for selection of a candidate through a method other than a primary: "The state executive committee shall, as the need arises and as North Carolina General Statutes direct, create any sectional committee to nominate, replace, or recommend any Democratic candidate, nominee or elected official." The North Carolina Democratic Party Plan of Organization, § 4.09 (August 19, 2017), https://goo.gl/gr67iG. Although S.L. 214 eliminates the 2018 primary, the Democratic Party has expressly provided for alternate methods for selecting its nominee in such a situation.

11

(*Id*. ¶ 5.)  Plaintiffs do not allege any impairment of their ability to advance their asserted purposes, as none of their asserted purposes relies on the existence of a primary election.  Even without a primary election, Plaintiffs can still identify and endorse candidates, for example.  During the 2014 election for the North Carolina Court of Appeals for which, by operation of law, there was no primary, the Democratic Party endorsed a single candidate out of a field of 19 candidates.  *See* Anne Blythe, *A whopping 19 candidates vying for one NC Court of Appeals seat*, THE NEWS & OBSERVER (Oct. 17, 2014, 11:51 AM), https://goo.gl/TT4eoB; *Arrowood gets nod for NC court from Democrats*, THE WASHINGTON TIMES (Oct. 13, 2014), https://goo.gl/c1PHSV ("The party's Executive Council made the decision over the weekend after hearing speeches from several registered Democrats seeking the job.").

While Plaintiffs and this Court have pointed to cases in which political parties brought challenges to election laws, *see* ECF No. 35 at 3; ECF No. 45 at 9–10, only in *Eu v. San Francisco* was standing expressly discussed.  In *Eu*, the challenged law prohibited the official governing bodies of political parties from endorsing candidates in party primaries, dictated the organization and composition of those bodies, limited the term of office of a party chair, and required that the chair rotate between residents of northern and southern California.  *Eu*, 489 U.S. 214, 216, (1989).  In other words, the challenged

statutory provisions—unlike S.L. 214—had a direct impact on the inner workings of the political parties, which the parties certainly had the right to challenge.

The standing requirement of Article III of the Constitution "ensures that federal courts respect 'the proper—and properly limited—role of the courts in a democratic society.'" *Ansley v. Warren*, 861 F.3d 512, 523 (4th Cir. 2017) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). "'In an era of frequent litigation, class actions, sweeping injunctions with prospective effect, and continuing jurisdiction to enforce judicial remedies, courts must be more careful to insist on the formal rules of standing, not less so.'" *Id.* (quoting *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 146 (2011)).

Here, Plaintiffs fail to meet their burden of establishing that their rights to associate have been harmed. They have, therefore, failed to show their standing to challenge North Carolina's law removing the requirement of primary elections for 2018 state judicial races.

## IV. Plaintiffs fail to state a claim because they have no constitutional right to a political primary, nor are their associational rights burdened by S.L. 214.

The crux of Plaintiffs' claim that S.L. 214 violates their associational rights is that they are entitled to a primary to select the Democratic Party's standard-bearer for judicial elections. In addition to Plaintiffs' failure to plead

13

facts sufficient to establish a facial challenge to S.L. 214, their claim fails as a matter of law because, since Plaintiffs are not entitled to a primary to nominate their chosen candidate, S.L. 214 does not burden their associational rights. Therefore, the Complaint must be dismissed under Rule 12(b)(6).

## A. Plaintiffs mount a facial challenge to S.L. 214, creating a higher burden that they cannot meet.

Under *United States v. Salerno*, a plaintiff asserting a facial challenge to the constitutionality of an act must "establish that no set of circumstances exists under which the Act would be valid . . . ." 481 U.S. 739, 745 (1987). Where a party mounts a facial challenge to a statute, it must meet a higher burden and cannot simply rely on conjecture. *Washington State Grange*, 552 U.S. at 449–50.

Like the challengers in *Washington State Grange*, Plaintiffs bring a facial challenge—disfavored by the courts—to S.L. 214. *Id.* at 450. As such, this Court may "not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary" cases." *Id.* at 450.

Neither this heightened standard for facial challenges nor the lower pleading standard of *Iqbal* are met by the bare factual pleadings of the Complaint. In the first half of the "Facts" section of their Complaint, Plaintiffs merely recite a history of judicial elections in North Carolina and the legislative enactments preceding S.L. 214. (Compl. ¶¶ 13–26.) Thereafter,

Plaintiffs make only conclusory statements to suggest the injuries they will suffer under S.L. 214. (Compl. ¶¶ 27–32.) These conclusions are insufficient to state a cause of action. *Iqbal*, 556 U.S. at 678; *Libertarian Party of Virginia v. Alcorn*, 826 F.3d 708, 718 (4th Cir. 2016), *cert. denied sub nom. Sarvis v. Alcorn*, 137 S. Ct. 1093, 197 L. Ed. 2d 182 (2017).

Plaintiffs' "Irreparable Injury and Harm" section is equally unavailing. (Compl. ¶¶ 40–45.) There, Plaintiffs allege that "elimination of primaries for judicial offices deprives Plaintiffs and their members of the capacity to perform the duties for which they were established and will cause them and their members great and immediate harm." (Compl. ¶ 41.) They further suggest that eliminating primaries "is in direct conflict with good and important public policies recognized and embraced by Defendants themselves and is not in the public interest." (*Id.* ¶ 42.) Though Plaintiffs suggest in an abstract sense potential symbolic harms they could suffer, they offer no facts to show how they will be harmed or burdened by S.L. 214. These conclusory allegations are insufficient to meet the *Iqbal* standard, much less the heightened standard of proof required for a facial challenge to the constitutionality of state legislation. *See Washington State Grange*, 552 U.S. at 450. Therefore, the Court should dismiss the Complaint under Rule 12(b)(6).

**B.    Dismissal is proper because S.L. 214 does not place a burden on Plaintiffs' protected rights.**

The Constitution leaves to the states how to regulate their elections in accordance with federal laws and the Constitution. *See Tashjian v. Republican Party*, 479 U.S. 208, 217 (1986) ("[T]he Constitution grants to the States a broad power to prescribe the 'Times, Places and Manner of holding Elections for Senators and Representatives,' Art. I, § 4, cl. 1, which power is matched by state control over the election process for state offices."). Those regulations are generally permissive so long as they do not directly burden a political party's associational rights; courts generally uphold "reasonable, politically neutral" regulations. *Washington State Grange*, 552 U.S. at 452 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)).

If there is a burden, the Court must analyze the character and magnitude of that burden to determine whether the State's interest justifies that burden. *Libertarian Party of Virginia*, 826 F.3d at 716-717. That analysis generally falls into three categories:

(1)    If an election regulation "imposes *no* burdens, it would not fail the balancing test even though it also served no discernible state interest." *McLaughlin v. N.C. Bd. of Elections*, 65 F.3d 1215, 1221 n.6 (4th Cir. 1995) (emphasis in original), *cert. denied*, 517 U.S. 1104 (1996).

(2)    If the regulation imposes only a modest burden, then "'the State's important regulatory interests are generally sufficient to justify reasonable,    nondiscriminatory    restrictions'    on    election

16

procedures." *Washington State Grange*, 552 U.S. at 452 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)).

(3) Regulations "imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest." *Id.*

This analysis was recently applied in *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442 (2008). There, the United States Supreme Court held that political parties do not have an associational right to have their nominees designated as such on the ballot. *Id.* at 453. The Supreme Court determined that Washington's primary did not burden the parties' associational rights because it "does not, by its terms, choose parties' nominees. . . . The law never refers to the candidates as nominees of any party, nor does it treat them as such." *Id.* at 453. The Supreme Court rejected the contention that voters would assume that, based on a candidate's party preference as shown on the ballot, a particular party associated with and approved of that candidate. *Id.* at 454.

The Fourth Circuit has recently summarized the key points of *Washington State Grange*:

> In *Washington State Grange*, the Court relied upon [*Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 357 (1997)] when rejecting a First Amendment challenge brought by several political parties to a Washington statute that provided that "candidates for office shall be identified on the ballot by their self-designated 'party preference,'" regardless of whether

17

they were nominated by the party they designated. 552 U.S. at 444, 128 S.Ct. 1184. Thus, under the challenged law, "[a] political party [could not] prevent a candidate who [was] unaffiliated with, or even repugnant to, the party from designating it as his party of preference." *Id.* at 447, 128 S.Ct. 1184. As a consequence, political parties no longer had any ability to "indicate their nominees on the ballot." *Id.* at 453 n.7, 128 S.Ct. 1184. The Court characterized that feature of the law as "unexceptional," explaining that *"[t]he First Amendment does not give political parties a right to have their nominees designated as such on the ballot." Id.* (emphasis added). And, as importantly, the Court stated that "[p]arties do not gain such a right simply because the State affords candidates the opportunity to indicate their party preference on the ballot." *Id.*

*Marcellus v. Va State Bd. of Elections*, 849 F.3d 169, 176 (4th Cir. 2017).

Here, S.L. 214 does not impose a burden on Plaintiffs' associational rights. Just as the parties in *Washington State Grange* could do, Plaintiffs "may now nominate candidates by whatever mechanism they choose." *Id.* at 453; *see also New York State Bd. of Elections v. Lopez Torres*, 552 U.S. 196, 196 (2008) (examining law requiring parties to select their nominees by a convention composed of delegates elected by party members). Nothing in S.L. 214 dictates how the parties may nominate their own candidates outside of a state-run primary. For that reason, S.L. 214 does not place any burden on Plaintiffs' associational rights.

The cases relied upon by Plaintiffs in their Complaint and in their Motion for Preliminary Injunction do not compel a different conclusion. In those cases, the Supreme Court addressed regulations that restricted access to the ballot by winnowing the number of candidates to be placed on the ballot. The ballot in each case was limited to one representative of each political party. Because of this limitation, the Supreme Court held that the parties had an interest in determining who that representative—their standard bearer— would be. Any interference with the selection of that standard bearer was an unconstitutional burden on the parties' associational rights.

In *California Democratic Party v. Jones*, the state election statute allowed all voters to vote in any primary, regardless of party affiliation. 530 U.S. 567, 581–82 (2000). The Supreme Court held that the statute violated the party's right to association where the party sought to limit voting in its primary to voters affiliated with the party. *Id.* at 581-82. *Jones* holds that if a state *chooses* to regulate its elections using primaries, the state cannot dictate to the political parties who participates in those elections. *Id.* at 572–73 (citations omitted) (emphasis added).

In *Tashjian v. Republican Party*, the state election statute required voters in any party primary election to be registered members of that party. 479 U.S. 208, 212–14 (1986). The Supreme Court held that the statute was an

unconstitutional restriction on the party's right to association where the party adopted a rule permitting independent voter participation in its primary election. *Id.* at 225. The statute "interfered with a party's associational rights by limiting 'the group of registered voters whom the Party may invite to participate in the basic function of selecting the Party's candidates.'" *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 359–60 (1997) (quoting *Tashjian*, 479 U.S. at 215–16). Similarly in *Eu* v. *San Francisco County Democratic Central Comm.,* the Supreme Court struck down California's election provisions prohibiting political parties from endorsing candidates in party primaries and regulating parties' internal affairs and structure. 489 U.S. 214, 224 (1989).

These cases examined statutory provisions that directly interfered with the rights of the political parties' members by placing some limitation on the parties in relation to the primaries (e.g., dictating who can vote in primary elections or whether the parties can make primary endorsements). They are not controlling here, however, where there is to be no primary. S.L. 214 places no limitation on Plaintiffs or other political parties. Contrary to Plaintiffs' apparent assertion, these cases do not establish that Plaintiffs are entitled to select their nominees through primaries and that primaries are, therefore, required. In fact, Plaintiffs have not cited to any case holding that a lack of a

primary election, particularly in the case of judicial officers, violates constitutional associational rights. This is telling and necessitates dismissal of Plaintiffs' facial challenge to S.L. 214.

Plaintiffs allege that "the public interests harmed by the elimination of primaries" include "the public's interests in an informed and knowledgeable electorate, the public's interest in the reduction of voter confusion and the public's interest in ensuring that persons elected to public office are supported by a majority of voters."[6] (Compl. ¶ 43.) Similar speculative harm was raised—and rejected—in *Washington State Grange*:

> But respondents' assertion that voters will misinterpret the party-preference designation [on the ballot] is sheer speculation. It "depends upon the belief that voters can be 'misled' by party labels. But '[o]ur cases reflect a greater faith in the ability of individual voters to inform themselves about campaign issues.' " *Tashjian*, 479 U.S., at 220, 107 S.Ct. 544 (quoting *Anderson*, supra, at 797, 103 S.Ct. 1564). There is simply no basis to presume that a well-informed electorate will interpret a candidate's party-preference designation to mean that the candidate is the party's chosen nominee or representative or that the party associates with or approves of the candidate . . . .
>
> Of course, it is possible that voters will misinterpret the candidates' party-preference designations as reflecting endorsement by the parties. But these cases involve a facial challenge, and we cannot strike down I–872 on its face based on the mere possibility of voter confusion . . . . Because respondents

---

[6] In support of their Motion for Preliminary Injunction, Plaintiffs also speculated that "the lack of a winnowing process for judicial candidates" could lead to "ballot clutter" and an "uninformed electorate." (Pls'. Reply, ECF No. 35, at 9.)

> brought their suit as a facial challenge, we have no evidentiary
> record against which to assess their assertions that voters will be
> confused.

*Washington State Grange*, 552 U.S. at 455. S.L. 214 does not on its face burden

association rights. As such, Defendants need not assert any interest, much

less a compelling one, for S.L. 214. *Washington State Grange*, 552 U.S. at 458.

Nevertheless, as recognized by the Supreme Court, providing voters with

relevant information about the candidates on the ballot is an interest sufficient

to sustain S.L. 214. *Id.* at 459.

### C. Plaintiffs do not have a right to designate a "standard bearer" on the ballot.

On this facial challenge, Plaintiffs ask the Court to enjoin the

elimination of the primary for judicial elections and to enjoin including the

Democratic Party affiliation of judicial candidates who are not the nominees of

Plaintiffs on the general election ballot. Importantly, in *Washington State*

*Grange,* the Supreme Court noted that:

> The First Amendment does not give political parties a
> right to have their nominees designated as such on the
> ballot. Parties do not gain such a right simply because
> the State affords candidates the opportunity to
> indicate their party preference on the ballot. "Ballots
> serve primarily to elect candidates, not as forums for
> political expression."

*Id.* at 453 n.7 (citations omitted). The Court was not "aware of [any] case in which the mere impression of association was held to place a severe burden on a group's First Amendment rights." *Id.* at 457 n.9.

Ultimately, I-872, the law at issue in *Washington State Grange*, and Section 4(a), which established that no party primaries shall be held for candidates seeking judicial office in 2018, have a similar effect; under neither law is there a primary election in which the political party's nominee is selected. As such, the challenge to Section 4(a) should fail for virtually the same reasons that the challenge to I-872 failed. The Supreme Court's conclusion is equally applicable as a conclusion here:

> Because I–872 does not on its face provide for the nomination of candidates or compel political parties to associate with or endorse candidates, and because there is no basis in this facial challenge for presuming that candidates' party-preference designations will confuse voters, I–872 does not on its face severely burden respondents' associational rights. We accordingly hold that I–872 is facially constitutional.

*Id.* at 458–59.

## CONCLUSION

A court "cannot, in the name of the Constitution, overturn duly enacted statutes simply 'because they may be unwise, improvident, or out of harmony with a particular school of thought." *Harris v. McRae*, 448 U.S. 297, 326 (1980) (quoting *Williamson v. Lee Optical Co.*, 348 U.S. 483, 488 (1955)). Rather,

23

"when an issue involves policy choices as sensitive as those implicated [here] . . . , the appropriate forum for their resolution in a democracy is the legislature." *Id.* (quotations omitted).

For the foregoing reasons and authorities, Defendants respectfully request that this honorable Court grant their Motion to Dismiss, with prejudice, dismissing all of Plaintiffs' claims against them.

Respectfully submitted this 20th day of February, 2018.

JOSHUA H. STEIN
Attorney General

/s/ James Bernier, Jr.
James Bernier, Jr.
Special Deputy Attorney General
N.C. State Bar No. 45869
Email: jbernier@ncdoj.gov

/s/ Olga Vysotskaya
Olga E. Vysotskaya de Brito
Special Deputy Attorney General
N.C. State Bar No. 31846
Email:  ovysotskaya@ncdoj.gov

/s/ Amar Majmundar
Amar Majmundar
Senior Deputy Attorney General
N.C. Bar No. 24668
Email: amajmundar@ncdoj.gov

/s/ Alexander McC. Peters
Alexander McC. Peters
Chief Deputy Attorney General
N.C. State Bar No. 13654
Email: apeters@ncdoj.gov

N.C. Department of Justice
Post Office Box 629
Raleigh, NC 27602-0629
Telephone: (919)716-6900

*Attorneys for the State of North Carolina; the North Carolina Bipartisan State Board of Elections and Ethics Enforcement; and Kimberly Strach, in her official capacity as Executive Director of the North Carolina Bipartisan State Board of Elections and Ethics Enforcement*

25

NELSON MULLINS RILEY &
SCARBOROUGH LLP

By: /s/ D. Martin Warf
Noah H. Huffstetler, III
N.C. State Bar No. 7170
D. Martin Warf
N.C. State Bar No. 32982
4140 Parklake Avenue, Suite 200
Raleigh, NC 27612
Telephone: (919) 877-3800
noah.huffstetler@nelsonmullins.com
martin.warf@nelsonmullins.com

*Attorneys for Philip E. Berger, in his
official capacity as President Pro
Tempore of the North Carolina Senate,
and Timothy K. Moore, in his official
capacity as Speaker of the North
Carolina House of Representatives*

## CERTIFICATE OF SERVICE

I certify that I have this day electronically filed the foregoing **Defendants' Joint Brief in Support of their Joint Motion to Dismiss** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel and parties of record.

This the 20th day of February, 2018.

/s/ James Bernier, Jr.
James Bernier, Jr.
Special Deputy Attorney General

## CERTIFICATE OF WORD COUNT

I certify that the foregoing **Defendants' Joint Brief in Support of their Joint Motion to Dismiss** contains fewer than 6250 words (exclusive of those sections of the Brief excluded by rule), which complies with the word limitations of Local Civil Rule 7.3(d) (M.D.N.C.).

This the 20th day of February, 2018.

/s/ James Bernier, Jr.
James Bernier, Jr.
Special Deputy Attorney General